# EXHIBIT "A"

NDO1070309M
Renewal of Number

# United States Liability Insurance Company

1190 Devon Park Drive, Wayne, Pennsylvania 19087
A Member Company of United States Liability Insurance Group

Home Office Copy

POLICY DECLARATIONS

**No. NDO1070309N**

NAMED INSURED AND ADDRESS:
PLUMBERS & PIPEFITTERS LOCAL #9 EDUCATION
FUND
450 RTE 33 & IRON ORE RD
ENGLISHTOWN, NJ 07726

POLICY PERIOD: (MO. DAY YR.) From: 07/06/2023 To: 07/06/2024

12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

BUSINESS DESCRIPTION: Non-Profit Directors and Officers

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.

| | PREMIUM |
|---|---|
| Non Profit Management Liability Coverage Parts | [redacted] |
| Wholesaler Broker Fee | |
| TOTAL: | |

Coverage Form(s) and Endorsement(s) made a part of this policy at time of issue
See Endorsement EOD (1/95)

Agent: CHRIS LEEF GEN AGCY INC. CA: CHRIS LEEF GEN INS AGCY
#OI81028 (1732)
P.O. Box 3747
Shawnee Mission, KS 66203

Broker:

Issued: 06/16/2023 11:17 AM

By: Authorized Representative

UPD (08-07) THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

# EXTENSION OF DECLARATIONS

Policy No. NDO1070309N

Effective Date: 07/06/2023

12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS

## FORMS AND ENDORSEMENTS

The following forms apply to the Management Liability coverage part

| *Endt#* | *Revised* | *Description of Endorsements* |
|---|---|---|
| DO-100 | 05/17 | Directors and Officers Coverage Part |
| DO-101 | 05/17 | Employment Practices Coverage Part |
| DO-168 NJ | 05/17 | Amendment of Exclusion Endorsement |
| DO-209 | 05/17 | Absolute Professional Liability Exclusion |
| DO-227 | 05/17 | Known Circumstances Disclosed in Application Exclusion |
| DO-239 | 05/17 | Specified Person or Entity Exclusion |
| DO-261 | 05/17 | Educators Legal Liability Coverage Endorsement |
| DO-283 | 05/17 | Data and Security Plus Endorsement |
| DO-290 | 05/17 | Fair Labor Standards Act Endorsement - Defense Costs and Indemnity Coverage |
| DO-298 | 05/17 | Amendment of Prior or Pending Litigation Exclusion |
| DO-314 | 03/21 | Biometric Information Exclusion |
| DO-GTC | 05/17 | General Terms and Conditions |
| Jacket | 07/19 | Policy Jacket |

USLI000139

# NON PROFIT MANAGEMENT LIABILITY COVERAGE PART DECLARATIONS

PLEASE READ YOUR POLICY CAREFULLY.

THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE. DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.

No. NDO1070309N

Effective Date: 07/06/2023
12:01 AM STANDARD TIME

ITEM I. PARENT ORGANIZATION AND PRINCIPAL ADDRESS

PLUMBERS & PIPEFITTERS LOCAL #9 EDUCATION FUND
450 RTE 33 & IRON ORE RD
ENGLISHTOWN, NJ 07726

ITEM II. POLICY PERIOD: (MM/DD/YYYY) From: 07/06/2023 To: 07/06/2024

## Non Profit Directors and Officers Liability Coverage Part

ITEM III. LIMITS OF LIABILITY

| | | |
|---|---|---|
| a. Non Profit Directors & Officers | $2,000,000 | EACH CLAIM |
| b. Non Profit Directors & Officers | $2,000,000 | IN THE AGGREGATE |

| | | |
|---|---|---|
| ITEM IV. RETENTION: | $500 | EACH CLAIM |
| ITEM V. PREMIUM: | [redacted] | |
| RETROACTIVE DATE: | Full Prior Acts | |
| PRIOR OR PENDING LITIGATION | See form DO-298 | |

## Employment Practices Liability Coverage Part

ITEM III. LIMITS OF LIABILITY

| | | |
|---|---|---|
| a. Employment Practices | $1,000,000 | EACH CLAIM |
| b. Employment Practices | $1,000,000 | IN THE AGGREGATE |
| ITEM IV. RETENTION: | $500 | EACH CLAIM |
| ITEM V. PREMIUM: | [redacted] | |
| RETROACTIVE DATE: | Full Prior Acts | |
| PRIOR OR PENDING LITIGATION | See form DO-298 | |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

NON PROFIT MANAGEMENT LIABILITY COVERAGE PART DECLARATIONS

PLEASE READ YOUR POLICY CAREFULLY.

THIS IS A CLAIMS MADE POLICY COVERAGE FORM AND UNLESS OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS FORM IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD, OR THE EXTENSION PERIOD, IF APPLICABLE. DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.

No. NDO1070309N

Effective Date: 07/06/2023
12:01 AM STANDARD TIME

## Fiduciary Liability Coverage Part

ITEM III. LIMITS OF LIABILITY

| | |
|---|---|
| a. Fiduciary Liability | NOT COVERED |
| ITEM IV. RETENTION: | NOT COVERED |
| ITEM V. PREMIUM: | NOT COVERED |

ITEM VI. Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
See Endorsement EOD (01/95)

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

USI 000141

In consideration of payment of the premium and subject to the Policy Declarations, General Terms and Conditions, and the limitations, conditions, provisions and all other terms of this **Coverage Part**, the **Company** and the **Insureds** agree as follows:

Words that are in bold have special meaning and are defined in Section III. DEFINITIONS of this **Coverage Part**, or in Section I. DEFINITIONS of the General Terms and Conditions, incorporated in or attached to this **Coverage Part**, as applicable.

I. INSURING AGREEMENTS

A. Individual Insured – Non-Indemnified Coverage

The **Company** will pay, on behalf of an **Individual Insured**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, to the extent such **Individual Insured** is not indemnified by the **Organization** for such **Loss** and **Defense Costs**.

B. Individual Insured – Indemnified Coverage

The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, but only to the extent the **Organization** indemnifies such **Individual Insured** for such **Loss** and **Defense Costs** as permitted or required by law.

C. Organization Coverage

The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period, if applicable.

II. INDIVIDUAL INSURED – NON-INDEMNIFIED COVERAGE ADDITIONAL LIMIT

"Dedicated Limit – Insuring Agreement A"

The **Company** shall pay an additional limit of liability, not to exceed an aggregate of $1,000,000 per **Policy Period**, solely for **Loss** covered under Section I. INSURING AGREEMENT, Subsection A. Individual Insured Non-Indemnified Coverage. This additional limit of liability shall be paid only after the applicable Limit of Liability for Individual Insured – Non-Indemnified Coverage of the Directors & Officers Liability **Coverage Part** shown in the Policy Declarations is completely exhausted by payment of **Loss**.

III. DEFINITIONS

**Claim** means any:

1. written demand for monetary damages or non-monetary relief, including injunctive relief;
2. civil proceeding commenced by service of a complaint or similar pleading;
3. criminal proceeding commenced by the return of an indictment;
4. administrative or regulatory proceeding commenced by the filing of a formal written notice of charges, notice of violations, notice of investigation, cease and desist or similar action;
5. arbitration, mediation or other alternative dispute resolution proceeding in which the **Insured** is obligated to participate if the **Insured** agrees to participate with the **Company's** prior written consent; or
6. other proceeding initiated before any governmental body which is authorized to render an enforceable judgment, order for monetary damages or other relief;

received by, or brought or initiated against any **Insured** alleging a **Wrongful Act**, including any appeal therefrom.

**Claim** also means any:

7. written request, first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** as described in subparagraphs 1. through 6. above.

A **Claim** shall be deemed made on the earliest of the date of service upon, or receipt by, any **Insured** of a potential **Claim** as described in subparagraphs 1. through 7. above.

**Defense Costs** means:

1. reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insured**; and

2. all other fees, costs, costs of attachment or similar bonds (without any obligation on the **Company's** part to apply for or furnish such bonds);

resulting from the investigation, adjustment, defense and appeal of a **Claim**. **Defense Costs** does not include **Loss** or the **Insured's** salaries, wages, overhead or benefits expenses.

**Employed Attorney Services** means legal services provided by any **Individual Insured**, but only to the extent that such services are performed directly to the **Organization** and in the **Individual Insured's** capacity as an **Employee** of the **Organization**.

Any services rendered by an **Individual Insured** for any party other than the **Organization** shall not constitute **Employed Attorney Services**.

**Employee** means any natural person whose labor or service is engaged and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns.

**Executive** means any natural persons who are directors, trustees, officers, managing members, advisory board members or committee members or any equivalent position of the **Organization**.

**Excess Benefit Transaction** means a transaction as defined in Internal Revenue Code, Title 26 §4958 (c)(1).

**Excess Benefit Transaction Excise Tax** means any excise tax imposed by the Internal Revenue Service, pursuant to Section 4958(a)(2) of the Internal Revenue Code, 26 U.S.C. § 4958(a)(2), against an **Individual Insured** who participated as an **Organization Manager** in connection with an **Excess Benefit Transaction**.

**Individual Insured** means any past, present or future:

1. **Executive**;
2. **Employee**; or

3. the estates, heirs, legal representatives or assigns of 1. and 2., above in the event of their death, incapacity or bankruptcy.

**Loss**

means the amount the **Insured** becomes legally obligated to pay as a result of a **Claim**, including:

1. damages, settlements and judgments;
2. pre-judgment and post judgment interest;
3. punitive or exemplary damages to the extent such damages are insurable under applicable law, statute or regulation;
4. the multiplied portion of any multiple damage award to the extent such damages are insurable under applicable law, statute or regulation; and
5. any ten percent (10%) **Excess Benefit Transaction Excise Tax** assessed by the Internal Revenue Service against any **Individual Insured**, subject to a $100,000 maximum sublimit of liability per **Policy Period** for **Loss** and **Defense Costs**, combined provided, however that indemnification by the **Organization** for such taxes is not expressly prohibited in the bylaws, certificate of incorporation or other governing documents of the **Organization**. This sublimit of liability is part of and not in addition to the applicable Directors and Officers Limit of Liability as set forth on the Policy Declarations.

For the purpose of determining the insurability of damages in items 3. and 4. above, the laws of the jurisdiction most favorable to the insurability of such damages shall control; provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

However, **Loss** does not include:

1. fines, penalties, sanctions and forfeitures;
2. taxes, except for any ten percent (10%) **Excess Benefit Transaction Excise Tax** as outlined in subparagraph 5. above of this definition of "**Loss**", or as otherwise provided by endorsement;
3. any amount uninsurable under the law pursuant

to which this **Policy** is construed;
4. cost of compliance with any order for, grant of or agreement to provide non-monetary or injunctive relief;
5. any unpaid salary, wages, commissions, severance, bonus or incentive compensation that is due or alleged to be due to any person; or
6. any amount for which an **Individual Insured** is absolved from payment by reason of any covenant, agreement or court order.

**Organization Manager** means a person or persons described in Internal Revenue Code, Title 26 §4958(f).

**Outside Entity** means any not-for-profit organization that qualifies as such under Section 501(c) of the Internal Revenue Code of 1986 (as amended), that is not an **Insured**.

**Outside Capacity** means the service, other than **Employed Attorney Services,** of an **Individual Insured** while acting in the capacity of director, officer, trustee, managing member or any equivalent position of an **Outside Entity,** but only if such service is provided on behalf of the **Outside Entity** with the specific knowledge, request, consent or direction of the **Named Insured**.

**Personal Injury Wrongful Act** means any actual or alleged false arrest, wrongful detention, malicious prosecution, invasion of privacy, wrongful entry or eviction, libel, slander or defamation.

**Pollutants** means any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance, smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, 'Volatile Organic Compound', 'Organic Pathogen', 'Silica', asbestos, lead and gases therefrom, radon, combustion byproducts, noise and 'Waste'. Specific examples include, but are not limited to diesel, kerosene, and other fuel oils, carbon monoxide, and other exhaust gases, mineral spirits and other solvents, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides, and all substances specifically listed, identified, or described by one or more of the following references:

1. Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions); or
2. Agency for Toxic Substances And Disease Registry ToxFAQs™; or
3. U.S. Environmental Protection Agency EMCI Chemical References Complete Index.

For the purposes of this definition;

1. 'Volatile Organic Compound' means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint varnish and cleaning products.
2. 'Organic Pathogen' means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.
3. 'Silica' means silica in any form and any of its derivatives, including but not limited to silica dust, silicon dioxide, crystalline silica, quartz, or non-crystalline (amorphous) silica.
4. 'Waste' means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

**Publisher Wrongful Act** means any infringement of copyright, trademark, unauthorized use of title, or plagiarism or misappropriation of ideas.

**Wrongful Act** means any:

1. actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties;
2. **Personal Injury Wrongful Act**;
3. **Publisher Wrongful Act**; or
4. **Employed Attorney Services**

committed or allegedly committed by:

a. the **Organization**;
b. any **Individual Insured,** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of 1. above; or
c. any **Individual Insured** while acting in an **Outside Capacity**.

---

IV. EXCLUSIONS

A. The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

Conduct

1. deliberately fraudulent act, omission, criminal act, or willful violation of any statute or regulation by any **Insured**; or
2. any **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled;

provided that this exclusion will not apply to **Defense Costs** incurred until:

a. a final, non-appealable adjudication in any underlying proceeding or action establishes such conduct; or
b. the **Insured** has admitted, stipulated or pleaded no contest to such conduct;

Bodily Injury/Property Damage

1. bodily injury, assault, battery, sickness, disease, death, mental anguish, humiliation or emotional distress of any person; or
2. damage to or destruction of any tangible property including any resulting loss of use thereof;

provided that this exclusion shall not apply to any mental anguish, humiliation or emotional distress asserted in an otherwise covered **Claim** alleging a **Personal Injury Wrongful Act**.

Employee Benefits

pension, profit sharing, welfare benefit or other employee benefit program established in whole or in part for the benefit of any **Individual Insured**, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (or

any amendments thereof or regulations promulgated there under) or similar provisions of any federal, state or local statutory law or common law;

Insured vs Insured

**Claim** brought by or on behalf of any **Insured**; provided that this exclusion shall not apply to:

1. any derivative action on behalf of, or in the name or right of the **Organization,** if such action is brought and maintained independent of and without the solicitation, assistance, participation or intervention of any **Insured**;
2. any **Claim** in the form of a cross claim, third party claim or other claim for contribution or indemnity by any **Individual Insured** which is part of or results directly from a **Claim** which is not otherwise excluded under this **Policy**;
3. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator, or creditors committee for an **Organization**; or
4. any **Claim** brought and maintained by or on behalf of any former **Executive**, but only if such **Claim** does not arise out of, directly or indirectly result from, is in consequence of, or in any way involves any **Wrongful Act**, responsibilities, actions or failure to act by any **Insured** during the tenure of service of such former **Executive**.

Employment Practices

refusal to employ, termination of employment, or employment related coercion, demotion, evaluation, reassignment, discipline, workplace conditions, false imprisonment, defamation, harassment, humiliation, or discrimination of employment, or other employment-related practices, policies, acts or omissions or sexual harassment by any **Insured** against any person(s) or entity; or negligence involving any of the foregoing;

it being understood that this exclusion applies whether the **Insured** may be held liable as an employer or in any other capacity and to any obligation to contribute with or indemnify another with respect to such **Claim**;

Discrimination

discrimination, including but not limited to discrimination based on religion, race, creed, color, sex, age, marital status, sexual preference, pregnancy,

handicap or disability;

Outside Entity vs. Insured

**Claim** made by or on behalf of an **Outside Entity** or one or more of the **Outside Entity's** directors, officers, trustees, managing members or any equivalent position against an **Individual Insured** acting in an **Outside Capacity**, provided, however that this exclusion shall not apply to:

1. any **Claim** brought derivatively on behalf of the **Outside Entity,** independently and without the direct solicitation, participation, intervention or assistance of the **Outside Entity** or any **Insured** in an **Outside Capacity**;
2. any **Claim** in the form of a cross claim, third party claim or other claim for contribution or indemnity by an **Insured** acting in an **Outside Capacity** and which is part of or results directly from a **Claim** which is not otherwise excluded under this **Policy**; and
3. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator, or creditors committee for an **Outside Entity** against an **Insured** acting in an **Outside Capacity** for such **Outside Entity**.

Pollution

1. discharge, emission, release, seepage, migration, dispersal or escape of **Pollutants** or any threat thereof, including nuclear reaction, radiation or contamination; or
2. treatment, removal or disposal of any **Pollutants**;
3. regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**; or any voluntary decision to do so; or
4. actual or alleged property damage including loss of use, bodily injury, sickness, disease or death of any person, or financial loss to an **Organization** or **Outside Entity**, their security holders, or their creditors resulting from any of the aforementioned matters in 1., 2., or 3. above of this Exclusion.

| | |
|---|---|
| Prior or Pending Litigation | litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured**, which was pending on or prior to the Prior or Pending Litigation date referenced on the Policy Declarations, or any such action based on the same or essentially the same fact, circumstance, matter, situation, transaction or event underlying or alleged therein; |
| Prior Notice | 1. fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** that, before the effective date of this **Policy**, was the subject of any notice given under any similar policy of insurance; or<br>2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**; |
| Prior Wrongful Acts of Subsidiaries | 1. **Wrongful Act** committed by an **Individual Insured** of any **Subsidiary**, or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or<br>2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**; |
| Professional Services | rendering or failure to render legal (except **Employed Attorney Services**), medical, psychological, counseling services or referrals, if the **Claim** is brought by or on behalf of any individual and/or entity for whom such services were, now are, or shall be performed;<br><br>provided that this exclusion shall not apply to that part of a **Claim** against an **Individual Insured** which alleges that the **Individual Insured**, in his or her capacity as such, failed to supervise those who performed such services. |

B. The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** for actual or alleged:

Contract

liability of the **Insured** under any express contract or agreement to which an **Organization** is a party, provided that this exclusion shall not apply to:

1. the extent that such **Organization** would have been liable in the absence of such contract or agreement; and
2. any **Claim** against an **Individual Insured**.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insured** for the purpose of determining the applicability of any of the above exclusions in Section A. or B. above.

---

V. ORDER OF PAYMENTS

In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Agreement A., Individual Insured - Non-Indemnified Coverage, and one or more of the other Insuring Agreements of this **Coverage Part**, the **Company** shall:

1. first pay **Loss** for which coverage is provided under Insuring Agreement A., Individual Insured - Non-Indemnified Coverage; then
2. with respect to whatever remaining amount of the Limit of Liability is available after payment above, pay such **Loss** for which coverage is provided under any other Insuring Agreement.

Except as otherwise provided above, the **Company** may pay covered **Loss** as it becomes due under this **Coverage Part** without regard to the potential for other future payment obligations under this **Coverage Part**.

---

VI. LIFETIME OCCURRENCE REPORTING PROVISION

A. If this Policy is cancelled or not renewed by the **Named Insured** for any reason other than being sold, acquired, or declaring bankruptcy, each **Individual Insured** who did not serve as such at the time of the cancellation or non-renewal, shall be provided with an unlimited extension of time to report any **Claim** first

made against such **Individual Insured** after the effective date of such cancellation or non-renewal, subject to the following conditions:

1. the **Claim** results from a **Wrongful Act** committed by the **Individual Insured** before the effective date of cancellation or non-renewal; and
2. the **Wrongful Act** was actually or allegedly committed during a **Policy Period** of a **Policy** issued by the **Company**; and
3. such **Individual Insured** was serving in such capacity during the **Policy Period** of a **Policy** issued by the **Company**; and
4. no Directors & Officers Liability policy, or similar policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is first made against such **Individual Insured**; and
5. the **Claim** is not otherwise excluded by the **Policy** issued by the **Company** in effect at the time the **Wrongful Act** actually or allegedly occurred; such **Policy** shall be the **Policy** under which coverage is applicable including all terms, conditions, limits, retentions, and endorsements therein.
6. the **Company** will have written continuous coverage for **Named Insured** from the effective date of the first **Policy** the **Company** issued to the date of cancellation or non-renewal of this **Policy**.

B. The LIFETIME OCCURRENCE REPORTING PROVISION described herein shall not apply to any **Claim** made against any **Individual Insured** caused by, arising or resulting, directly or indirectly from or in consequence of the **Individual Insured's** serving in an **Outside Capacity** for an **Outside Entity**.

---

VII. TIMELY NOTICE AND RESOLUTION INCENTIVE

Retention Forgiveness

In the event of a **Claim**, the **Company** shall waive the applicable retention under this **Coverage Part**, up to a maximum of $10,000, if each of the following conditions are met:

1. The **Claim** is reported to the **Company** within thirty (30) days of first receipt by an **Insured**; and
2. The **Company** successfully negotiates a

settlement of the **Claim** within the Limits of Liability of this **Coverage Part**; and

3. The **Insured** consents to the settlement of the **Claim** without condition within thirty (30) days after notice of the settlement is provided to the **Insured** by the **Company**; and
4. Settlement of the **Claim** is finalized by the **Company** within ninety (90) days of the **Claim** being first reported to the **Company**.

## VIII. OUTSIDE DIRECTORSHIP PROVISION

In the event a **Claim** is made against any **Individual Insured** arising out of their service as a director, officer, trustee, managing member or any equivalent positions of an **Outside Entity**, coverage afforded under this **Policy** shall be excess of any indemnification provided by the **Outside Entity** and any insurance provided to the **Outside Entity** which covers its directors, trustees, officers, managing members or any equivalent position.

In consideration of payment of the premium and subject to the Policy Declarations, General Terms and Conditions, and the limitations, conditions, provisions and all other terms of this **Coverage Part**, the **Company** and the **Insureds** agree as follows:

Words that are in bold have special meaning and are defined in Section II. DEFINITIONS of this **Coverage Part**, or in Section I. DEFINITIONS of the General Terms and Conditions, incorporated in or attached to this **Coverage Part**, as applicable.

I. INSURING AGREEMENTS

The **Company** will pay on behalf of an **Insured, Loss** and **Defense Costs** resulting from a **Claim** first made against an **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, by or on behalf of:

A. Employment Practices Liability — any **Employee** or applicant for employment for a **Wrongful Employment Act**; or

B. Third Party Liability — any natural person, other than an **Employee**, for a **Wrongful Third Party Act**.

II. DEFINITIONS

**Claim** means any:

1. written notice received by an **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**, including a written demand for monetary or non-monetary relief, including injunctive relief;
2. civil proceeding commenced by the service of a complaint or similar pleading;
3. formal civil, administrative or regulatory proceeding or formal civil, administrative or regulatory investigation, including any such proceeding brought by or in association with the Equal Employment Opportunity Commission or any similar federal, state or local agency with jurisdiction over an **Organization's** employment practices;
4. arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document; or
5. Notice of Violation or Order to Show Cause or

written demand for monetary relief or injunctive relief, commenced by the receipt by an **Insured** of such Notice, Order or written demand, issued by the Office of Federal Contract Compliance Programs;

received by, or brought or initiated against any **Insured** alleging a **Wrongful Act**, including any appeal therefrom.

**Claim** also means any:

6. written request, first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** as described in subparagraphs 1. through 5. above.

A **Claim** shall be deemed made on the earliest of the date of service upon, or receipt by, any **Insured** of a potential **Claim** as described in subparagraphs 1. through 6. above.

Notwithstanding the foregoing, **Claim** shall not include any labor dispute or grievance proceeding, arbitration or other proceeding brought against any **Insured** pursuant to a collective bargaining agreement.

**Confidential Employee Information** means any non-public, personally identifiable information regarding an **Employee**, collected, stored or transmitted by an **Organization**, for the purpose of establishing or maintaining an employment relationship.

**Defense Costs** means:

1. reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insured**; and
2. all other fees, costs, costs of attachment or similar bonds (without any obligation on the **Company's** part to apply for or furnish such bonds);

resulting from the investigation, adjustment, defense and appeal of a **Claim**. **Defense Costs** does not include **Loss** or salaries, wages, overhead, benefits expenses of any **Individual Insured**.

**Employee** means any natural person whose labor or service is engaged and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and

includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns.

**Employee Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan, and any other payment to or for the benefit of an **Employee** arising out of the employment relationship. **Employee Benefits** shall not include salary, wages, commissions, or non-deferred cash incentive compensation.

**ERISA or any similar act** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

**Executive** means any natural persons who serve as directors, trustees, officers, managing members, advisory board members or committee members or any equivalent position of the **Organization**.

**Fair Labor Standards Act Violation** shall mean any actual or alleged violation of the Fair Labor Standards Act, any amendments thereto or the provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act, including misrepresentation under these laws. **Fair Labor Standards Act Violation** does not mean any actual or alleged violation of the Equal Pay Act, any amendments thereto or the provisions of any similar federal, state or local law.

**Harassment** means:

1. sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance; or
2. other workplace harassment, including workplace bullying, which creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance.

**Individual Insured** means any past, present or future:

1. **Executive**;
2. **Employee**; or
3. the estates, heirs, legal representatives or assigns of 1. and 2. above in the event of their death, incapacity or bankruptcy.

**Loss**

means the amount the **Insured** becomes legally obligated to pay as a result of a **Claim**, including:

1. damages, settlements, and judgments;
2. front pay and back pay;
3. pre-judgment and post judgment interest;
4. liquidated damages awarded by a court pursuant to a violation of the Equal Pay Act, the Age Discrimination in Employment Act and the Family Medical Leave Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local law, statute or regulation;
5. punitive or exemplary damages to the extent such damages are insurable under applicable law, statute or regulation;
6. the multiplied portion of any multiple damage award to the extent such damages are insurable under applicable law, statute or regulation; and
7. attorney's fees awarded by a court against an **Insured** to a person or entity bringing a **Claim** or agreed to by the **Company**, in writing, in connection with a settlement;

For the purpose of determining the insurability of 4., 5., or 6. above the laws of the jurisdiction most favorable to the insurability of such damages shall control; provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

However, **Loss** does not include:

1. the cost of compliance with any order for, grant of, or agreement to provide non-monetary or injunctive relief;
2. costs associated with providing any accommodation for persons with disabilities or any other status which is protected under any applicable federal, state or local statutory or common law, including but not limited to the Americans with Disabilities Act, the

Civil Rights Act of 1964, or any amendments to or rules or regulations promulgated thereunder;
3. any amounts uninsurable under the law pursuant to which this **Coverage Part** is construed;
4. civil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an **Insured** whether pursuant to law, statute, regulation or court rule;
5. future salary, wages, commissions or **Employee Benefits** of a person bringing a **Claim** who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order, or other resolution of a **Claim**;
6. salary, wages, commissions, **Employee Benefits**, bonus or incentive compensation or other monetary payments which constitute severance payments or payments pursuant to a notice period;
7. **Employee Benefits** due or to become due or the equivalent value of such **Employee Benefits**, except with respect to any **Claim** for wrongful termination; or
8. any amount for which an **Individual Insured** is absolved from payment by reason of any covenant, agreement or court order.

**Retaliation** means retaliatory treatment against an **Employee** because of:

1. the exercise of or attempt to exercise an **Employee's** rights under law or for otherwise engaging in any legally protected activity;
2. refusing to violate any law or opposing any unlawful practice;
3. having cooperated in a proceeding or investigation (including an internal investigation by an **Organization's** human resources department or legal department) into alleged unlawful activity by an **Insured**;
4. disclosing or threatening to disclose to a superior or any governmental agency any alleged violations of law by an **Insured** and/or the **Organization**;
5. filing any claim against the **Organization** under any federal, state or local whistleblower law including Federal False Claims Act, or Sarbanes-Oxley; or
6. **Employee** strikes or slowdowns.

**Wrongful Act** means any **Wrongful Employment Act** or **Wrongful**

**Third Party Act**.

**Wrongful Employment Act** means any actual or alleged:

1. violation of any federal, state or local laws (whether statutory or common) prohibiting discrimination in employment based on a person's race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any protected military status, or any other status that is protected pursuant to any such laws;
2. **Harassment**;
3. **Retaliation**;
4. wrongful: termination, dismissal or discharge of employment, whether actual or constructive;
5. wrongful: demotion; denial of tenure; failure or refusal to hire or promote; denial of seniority; failure to employ; or wrongful or negligent employee reference;
6. wrongful employment-related: misrepresentation; defamation, humiliation, libel or slander; negligent evaluation; wrongful discipline; wrongful deprivation of career opportunity; negligent retention, supervision, hiring or training; emotional distress, mental anguish, invasion of privacy or false imprisonment;
   but only when alleged as part of a **Claim** for an act described in 1. through 5. above;
7. wrongful failure to adopt or enforce consistent employment-related corporate workplace policies and procedures arising from 1. through 6. above;
8. breach of any express or implied contract, including any contract arising out of any personnel manual, employee handbook, policy statement or other representation; or
9. unauthorized use or disclosure of **Confidential Employee Information**;

committed or allegedly committed by an **Organization** or by an **Individual Insured** while acting in his or her capacity as such by any means including the internet, social media, email, or telecommunications systems.

**Wrongful Third Party Act** means any actual or alleged:

1. discrimination based on race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any military protected status, or any other status that is protected pursuant to any federal, state or local statutory or common law;
2. harassment of either a sexual nature or other unwelcome conduct; or
3. violation of civil rights relating to such discrimination or harassment;

against any natural person, other than an **Employee**, committed or allegedly committed by an **Organization** or by an **Individual Insured** while acting in his or her capacity as such, by any means including the internet, social media or email, or telecommunication systems.

## III. EXCLUSIONS

A. The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** for:

Bodily Injury/ Property Damage

any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use; provided that this exclusion shall not apply to any mental anguish, emotional distress, invasion of privacy, humiliation, libel, slander or defamation asserted in an otherwise covered **Claim** alleging a **Wrongful Act**.

Violation of Law

any actual or alleged violation of:

1. **ERISA or any similar act** (except Section 510 of ERISA), or any other federal, state or local statutory or common law anywhere in the world governing any employee benefit program, policy, plan or arrangement of any type, including but not limited to laws governing retirement or pension benefit programs, welfare plans, insurance plans, employee stock options, employee stock ownership plans, employee stock purchase plans or deferred compensation programs;
2. the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended or any other similar federal, state or

local statutory or regulatory law or common law anywhere in the world;

3. any law governing workers' compensation, unemployment insurance, social security, disability benefits or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;
4. the Occupational Safety and Health Act of 1970 (OSHA), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing workplace safety and health;
5. the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing an employer's obligation to notify or bargain with others in advance of any facility closing or mass layoff; or
6. the National Labor Relations Act, as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing employees' rights and employers' duties with respect to unions, bargaining, strikes, boycotts, picketing, lockouts or collective activities;

however, the foregoing shall not apply to any **Claim** alleging **Retaliation** (including any **Claim** alleging retaliation in violation of Section 510 of ERISA) or wrongful termination of employment whether actual or constructive, because of an **Employee's** exercise of a right pursuant to any such laws.

B. The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** (except where otherwise noted) in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or alleged:

Prior or Pending Litigation

litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured**, which was pending on or prior to the Prior or Pending Litigation date referenced on the Policy Declarations, or any such action based on the same or essentially the

same fact, circumstance, matter, situation, transaction or event underlying or alleged therein;

Prior Notice

1. fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** that, before the effective date of this **Policy**, was the subject of any notice given under any similar policy of insurance; or
2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**;

Prior Wrongful Acts of Subsidiaries

1. **Wrongful Act** committed by an **Individual Insured** of any **Subsidiary**, or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or
2. other fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** whenever occurring, which together with a fact, circumstance, matter, situation, transaction, event, or **Wrongful Act** described in subparagraph 1. above, would constitute **Interrelated Wrongful Acts**;

Wage and Hour

**Fair Labor Standards Act Violation**

Breach of Employment Contract

breach of any express employment contract or express employment agreement; provided that this exclusion shall not apply to:

1. **Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such contract or agreement; or
2. **Defense Costs**.

---

IV. LIFETIME OCCURRENCE REPORTING PROVISION

A. If this Policy is cancelled or not renewed by the **Named Insured** for any reason other than being sold, acquired, or declaring bankruptcy, each director or officer who did not serve as such at the time of the cancellation or non-renewal, shall be provided with an unlimited extension of time to report any **Claim** first made against such

director or officer after the effective date of such cancellation or non-renewal, subject to the following conditions:

1. the **Claim** results from a **Wrongful Act** committed by the director or officer before the effective date of cancellation or non-renewal; and
2. the **Wrongful Act** was actually or allegedly committed during a **Policy Period** of a **Policy** issued by the **Company**; and
3. such director or officer was serving in such capacity during the **Policy Period** of a **Policy** issued by the **Company**; and
4. no Directors & Officers Liability policy, or similar policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is first made against such director or officer; and
5. the **Claim** is not otherwise excluded by the Policy issued by the **Company** in effect at the time the **Wrongful Act** actually or allegedly occurred; such **Policy** shall be the **Policy** under which coverage is applicable including all terms, conditions, limits, retentions, and endorsements therein.
6. the **Company** will have written continuous coverage for **Named Insured** from the effective date of the first **Policy** the **Company** issued to the date of cancellation or non-renewal of this **Policy**.

B. The LIFETIME OCCURRENCE REPORTING PROVISION described herein shall not apply to any **Claim** made against any director or officer caused by, arising or resulting, directly or indirectly from or in consequence of the director or officer serving in an **Outside Capacity** for an **Outside Entity**.

This endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

# AMENDEMENT OF EXCLUSION ENDORSEMENT

It is hereby agreed that the Directors and Officers **Coverage Part**, Section I., INSURING AGREEEMENTS, is deleted and replaced by the following:

Except as otherwise provided in Section IV. EXCLUSIONS, the **Company** and the **Insured** agree as follows:

| | |
|---|---|
| A. Individual Insured – Non-Indemnified Coverage | The **Company** will pay, on behalf of an **Individual Insured**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, to the extent such **Individual Insured** is not indemnified by the **Organization** for such **Loss** and **Defense Costs**. |
| B. Individual Insured – Indemnified Coverage | The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, but only to the extent the **Organization** indemnifies such **Individual Insured** for such **Loss** and **Defense Costs** as permitted or required by law. |
| C. Organization Coverage | The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period, if applicable. |

It is further agreed that the Directors and Officers **Coverage Part**, Section IV., EXCLUSIONS, is amended by the following:

| | |
|---|---|
| Excluded Claims | any **Wrongful Act** which proximately causes or results in a **Claim** which is excluded by this **Policy** or any endorsements thereto. |

It is also agreed that the Employment Practices **Coverage Part**, Section I., INSURING AGREEEMENTS, is deleted and replaced by the following:

Except as otherwise provided in Section III. EXCLUSIONS, the **Company** and the **Insured** agree as follows:

The **Company** will pay on behalf of an **Insured, Loss** and **Defense Costs** resulting from a **Claim** first made against an **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, by or on behalf of:

A. Employment Practices Liability — any **Employee** or applicant for employment for a **Wrongful Employment Act**; or

B. Third Party Liability — any natural person, other than an **Employee**, for a **Wrongful Third Party Act**.

It is further agreed that the Employment Practices **Coverage Part**, Section III., EXCLUSIONS, is amended by the following:

Excluded Claims — any **Wrongful Act** which proximately causes or results in a **Claim** which is excluded by this **Policy** or any endorsements thereto.

It is also agreed that the Fiduciary Liability **Coverage Part**, Section I., INSURING AGREEEMENTS, is deleted and replaced by the following:

Except as otherwise provided in Section III. EXCLUSIONS, the **Company** and the **Insured** agree as follows:

A. Fiduciary Liability Coverage — The **Company** will pay on behalf of an **Insured, Loss** and **Defense Costs** resulting from a **Claim** first made against an **Insured** during the **Policy Period**, or during the Extended Reporting Period, if applicable, for **Wrongful Acts** by an **Insured** or by any natural person for whose **Wrongful Acts** the **Insured** is legally liable.

B. Voluntary Settlement Program Coverage — The **Company** shall pay on behalf of an **Insured**, **Voluntary Settlement Program Costs** and **Defense Costs** with respect to a **Voluntary Settlement Program Notice** that is first reported to the **Company** during the **Policy Period**, provided that the **Company's** maximum liability for all **Voluntary Settlement Program Costs** and related **Defense Costs** for the **Policy Year** shall be $150,000, which amount is part of and not in addition to the maximum aggregate Fiduciary Liability Limit of Liability set forth on the Policy Declarations.

However, coverage hereunder shall not apply if any **Individual Insured** had knowledge that a **Plan** is or was actually or allegedly not in compliance with any statute, rule or regulation related to a **Voluntary Settlement Program** as of the earlier of the effective date of this **Policy** or the effective date of the first policy in an uninterrupted series of policies issued by the **Company** of which this **Coverage Part** is a direct or indirect renewal or replacement.

It is further agreed that the Fiduciary Liability **Coverage Part**, Section III., EXCLUSIONS, is amended by the following:

| | |
|---|---|
| Excluded Claims | any **Wrongful Act** which proximately causes or results in a **Claim** which is excluded by this **Policy** or any endorsements thereto. |

All other terms and conditions of this **Policy** remain unchanged. This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

# ABSOLUTE PROFESSIONAL LIABILITY EXCLUSION

It is hereby agreed that the Directors and Officers **Coverage Part**, Section IV. EXCLUSIONS, Subsection A. “Professional Services”, is deleted in its entirety and replaced by the following:

Professional Services

1. rendering or failure to render any professional services by any **Insured**, whether or not such services are rendered for a fee; or
2. **Employed Attorney Services**

It is further agreed that the Directors and Officers **Coverage Part**, Section III. DEFINITIONS, **Wrongful Act** is amended by the deletion of Item 4. **Employed Attorney Services**.

All other terms and conditions of this **Policy** remain unchanged. This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

NON PROFIT MANAGEMENT LIABILITY POLICY

# KNOWN CIRCUMSTANCES DISCLOSED IN APPLICATION EXCLUSION

It is hereby agreed that this endorsement applies to all purchased Coverage Parts:

The Company shall not be liable to make any payment for Loss or Defense Costs in connection with any Claim made against any Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any matter, fact, or circumstances disclosed in connection with Question 18 of the Application dated 6/30/2009.

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

NON PROFIT MANAGEMENT LIABILITY POLICY

# SPECIFIED PERSON OR ENTITY EXCLUSION

It is hereby agreed that this endorsement applies to all purchased Coverage Parts:

The Company shall not be liable for Loss or Defense Costs in connection with any Claim:

1. brought by the person(s) or entity(ies) named below; or
2. brought against an Insured based upon, arising out of, directly or indirectly resulting from or in consequence of the activities, operations, acts or failure to act of the following person(s) or entity(ies):

Plumbers & Pipefitters Local #9

All other terms and conditions of this Policy remain unchanged. This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

# EDUCATORS LEGAL LIABILITY COVERAGE ENDORSEMENT

It is hereby agreed that the Directors and Officers **Coverage Part**, Section III. DEFINITIONS, "**Wrongful Act"** is amended by the addition of the following:

5. failure to educate, including but not limited to the failure identify and/or provide any educational needs or support services.

All other terms and conditions of this **Policy** remain unchanged. This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

# DATA & SECURITY+ ENDORSEMENT

It is hereby agreed:

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement. This endorsement is part of and subject to the provisions of the **Policy** to which it is attached.

## I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of coverages and Limits of Liability provided by this endorsement.

| COVERAGE | LIMIT OF LIABILITY |
|---|---|
| A. **Data Breach** Expense | $50,000 each claim<br>$50,000 in the aggregate |
| B. **Identity Theft** Expense | $50,000 each claim<br>$50,000 in the aggregate |
| C. **Workplace Violence Act** Expense | $50,000 each claim<br>$50,000 in the aggregate |
| D. **Kidnapping** Expense | $50,000 each claim<br>$50,000 in the aggregate |

The maximum aggregate per **Policy Period** for A. through D. above shall be $200,000 in the aggregate.

No retentions shall apply to the sublimits shown above.

## II. COVERAGES:

A. **Data Breach** Expense
The **Company** will pay on behalf of the **Organization** up to the **Data Breach** Expense Limit of Liability stated in the schedule above, for reasonable and necessary expenses in items 1. through 6. below:

1. Development of a plan to assist the **Organization** in responding to a **Data Breach**;
2. Data analysis or forensic investigation to assess the scope of a **Data Breach**;
3. The development, printing and mailing of legally required notification letters to those affected by a **Data Breach;**

4. Development of a website link for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent;
5. Development of a customer relationship management system for use by the **Organization** in communicating with persons affected by a **Data Breach** after legally required notification letters are sent**;**
6. Public relations services or crisis management services retained by the **Organization** to mitigate the adverse affect on the **Organization's** reputation resulting from a **Data Breach** that becomes public and only after legally required notification letters are sent.

incurred by the **Organization** as a result of a **Data Breach.** The **Data Breach** must be first occur, be discovered by an **Insured**, and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the **Data Breach** is first discovered by an **Insured**. The expenses below must be incurred within one (1) year of the reporting of such **Data Breach**:

The **Organization** must first report the **Data Breach** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above costs.

B. **Identity Theft** Expense

The **Company** will pay on behalf of a director or officer of the **Organization** up to the **Identity Theft** Expense Limit of Liability stated in the schedule above, for expenses, services or fees noted in items 1. through 3. below:

1. Credit monitoring services provided by a vendor of the **Company's** choice for the affected director or officer for up to one year following an **Identity Theft;**
2. Additional application fees paid by a director or officer whose loan(s) were rejected based on incorrect credit information resulting from an **Identity Theft**;
3. Notary fees, certified and overnight mail expenses paid by a director or officer in connection with reporting an **Identity Theft** to financial institutions, credit bureaus and agencies and law enforcement authorities.

incurred by such director or officer after he or she has become a victim of **Identity Theft.** The **Identity Theft** must first occur, be first discovered by an **Insured,** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the **Identity Theft** is first discovered by an **Insured.** The expenses above must be incurred within one (1) year of the reporting of such **Identity Theft**:

Any director or officer of the **Organization** who is a victim of **Identity Theft** must first report the **Identity Theft** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above expenses, services or fees.

C. **Workplace Violence Act** Expense

The **Company** will reimburse the **Organization,** up to the **Workplace Violence Act** Expense Limit of Liability stated in the schedule above**,** for the following reasonable costs paid by the **Organization** for a period of thirty (30) days following, and as a result of, a

**Workplace Violence Act**:

1. Counseling services rendered to **Employees** and persons on the **Organization's Premises** directly affected by a **Workplace Violence Act**. The counseling services must be rendered by a licensed, professional counselor of the **Organization's** choice.
2. Services rendered by an independent public relations consultant of the **Organization's** choice for the purpose of mitigating the adverse affect of a **Workplace Violence Act** on the **Organization**.

To be covered, the **Workplace Violence Act** must occur during the **Policy Period** and be reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

D. **Kidnapping** Expense

The **Company** will reimburse the **Organization,** up to the **Kidnapping** Expense Limit of Liability stated in the schedule above**,** for the following reasonable costs paid by the **Organization** as a result of a **Kidnapping:**

1. Retaining an independent negotiator or consultant to facilitate the release of a **Kidnapping** victim. Nothing herein shall obligate the **Company** to recommend, select, retain or arrange for the retention of such independent negotiator or consultant;
2. Interest on a loan obtained by the **Organization** to pay expenses covered under this endorsement that is incurred as a result of a **Kidnapping.** However, there is no coverage for interest accruing prior to thirty (30) days preceding the date of such payment or subsequent to the date the **Company** pays any portion of a **Kidnapping** Expense or for expenses not covered under this endorsement;
3. Travel and accommodations incurred by the **Organization** in direct response to the **Kidnapping.** Nothing herein shall obligate the **Company** to recommend, select, or arrange for such travel and accommodations;
4. A reward up to $10,000 paid by the **Organization** to an informant for information which leads to the arrest and conviction of the person(s) responsible for the **Kidnapping**;
5. The current base salary paid to a director or officer of the **Organization** for the director or officer's work on behalf of the **Organization**, who is a victim of a **Kidnapping** subject to the following:
   a. salary reimbursement shall commence on the thirty-first (31st) consecutive day after a **Kidnapping**;
   b. salary reimbursement shall end when the director or officer is released; or is confirmed dead; or one hundred and twenty (120) days after the director or Officer is last confirmed to be alive; or twelve (12) months after the date of the **Kidnapping**, or when the **Kidnapping** Expense Limit of Liability has been exhausted by payments made by the **Company**, whichever occurs first.

   There is no coverage for **Kidnapping** Expense resulting from a **Kidnapping** planned, carried out or participated in, directly or indirectly, by any person who is or was a member of the victim's family or the **Organization**.

The **Kidnapping** must occur and be reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

III. ADDITIONAL DEFINITIONS

It is hereby agreed that the Directors and Officers **Coverage Part**, Section III. DEFINITIONS, is amended by the addition of the following definitions:

**Data Breach**

means the misappropriation or public disclosure, by electronic or non-electronic means, by the **Organization** and without the knowledge of, consent, or acquiescence of the president, member of the board of directors or any executive officer, of an individual(s) **Personally Identifiable Information** in the **Organization's** care, custody and control without the authorization or permission of the owner of such information.

**Identity Theft**

Means:

1. the act of obtaining **Personally Identifiable Information** belonging to a director or officer of the **Organization** without that person's authorization, consent or permission; and
2. the use of **Personally Identifiable Information** so obtained to make or attempt to make transactions or purchases by fraudulently assuming that person's identity.

**Identity Theft** does not mean any of the above committed directly or indirectly by a director or officer of the **Organization,** or by a family member of any director or officer.

There is no coverage for any **Identity Theft** Expense unless **Personally Identifiable Information** that is obtained without authorization, consent or permission is used to make or attempt to make purchases or conduct transactions by fraudulently assuming the identity of a director or officer of the **Organization**.

**Kidnapping**

means an actual or alleged wrongful abduction and involuntary restraint of a director or officer of the **Organization**, by one or more persons acting individually or collectively in which monetary or non-monetary demands are made to the **Organization** to obtain the director's or officer's release.

**Personally Identifiable Information** means:

1. information concerning an individual(s) that would be considered "non-public information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (as amended) and its implementing regulations including but not limited to Social Security numbers or account numbers correlated with names and addresses which is in an Insured's care, custody and control; and
2. personal information as defined in any U.S. federal, state or local privacy protection law governing the control and use of an individual's personal and confidential information, including any regulations promulgated thereunder; and
3. protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ("HIPPA") or the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH") (Public Law 111- 5), as amended, and any regulations promulgated thereto.

   **Personally Identifiable Information** does not mean information that is available to the public which does not include otherwise protected personal information.

**Premises** means buildings, facilities or properties leased or owned by the **Organization** in conducting its operations.

**Workplace Violence Act** means an actual use of unlawful deadly force, or the threatened use of unlawful deadly force involving the display of a lethal weapon, occurring on the **Organization's Premises** and directed at an **Individual Insured,** or other persons on the **Premises** of the **Organization**.

IV. LIMITS OF LIABILITY AND RETENTION

1. The maximum Limit of Liability for any expenses provided by this endorsement shall be in addition to the Limits of Liability as set forth in the Policy Declarations for the Directors and Officers **Coverage Part**.
2. Any one incident, interrelated incidents or series of similar or related incidents for which coverage is provided under this endorsement shall be treated as one incident subject to

the maximum Limit of Liability available under this endorsement at the time the incident(s) is first reported to the Company regardless of whether the incident(s) continues and expenses are incurred by the Organization in any subsequent Policy Period(s).

V. ADDITIONAL EXCLUSIONS

It is hereby agreed that the Directors and Officers **Coverage Part**, Section IV. EXCLUSIONS, is amended by the addition of the following:

Data Breach Related

1. Expense reimbursement resulting in any **Insured** gaining any profit, remuneration or advantage to which the **Insured** is not legally entitled;
2. expenses incurred by any **Subsidiary** of an **Organization** occurring prior to the date that such entity became a **Subsidiary** or incurred at any time that such entity is not a **Subsidiary**;
3. expenses arising from any incident(s) of which any **Insured** had notice before the inception date of this Policy; or any fact, circumstance, event, situation or incident which before the inception date of this Policy was the subject of any notice under any other similar policy of insurance or any future claims for expenses under this Policy based upon such pending or prior notice;
4. The portion of any expenses covered under this endorsement that is also covered under any other coverage part of this **Policy**;
5. Reissuance of credit or debit cards or any other expense not shown in Section II, COVERAGES, sub-section A, **Data Breach** Expense.

VI. COVERAGE LIMITATIONS

The following terms, conditions and exclusions in the General Terms and Conditions and the Directors and Officers **Coverage Part** do not apply to this endorsement:

1. General Terms and Conditions
   a. Section II. EXTENDED REPORTING PERIOD
   b. Section XI. SPOUSAL AND DOMESTIC PARTNER EXTENSION

2. Directors and Officers **Coverage Part**
   a. Section IV. EXCLUSIONS, Subsection A. "Bodily Injury/Property Damage"
   b. Section VI. LIFETIME OCCURRENCE REPORTING PROVISION
   c. Section VIII. OUTSIDE DIRECTORSHIP PROVISION

All other terms and conditions of this **Policy** remain unchanged. This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

# FAIR LABOR STANDARDS ACT ENDORSEMENT DEFENSE COSTS AND INDEMNITY COVERAGE

It is hereby agreed that the Employment Practices **Coverage Part**, Section I. INSURING AGREEMENTS, is amended by the addition of the following:

C. Fair Labor Standards Act Defense Costs and Indemnity Coverage

1. any **Employee** for a **Fair Labor Standards Act Violation**; provided that this Insuring Agreement C. is subject to a maximum sublimit of liability of $100,000 per **Policy Period** for **Loss** and **Defense Costs**, combined. This sublimit of liability is part of and not in addition to the applicable Employment Practices Limit of Liability as set forth on the Policy Declarations, and is subject to the applicable Retention for the Employment Practices Liability **Coverage Part.**

It is also agreed that the Employment Practices **Coverage Part**, Section III. EXCLUSIONS, Subsection B. "Wage and Hour" is deleted in its entirety.

It is also agreed that the Employment Practices **Coverage Part**, Section II., DEFINITIONS, **Wrongful Act** is deleted and replaced by the following:

**Wrongful Act** means any **Wrongful Employment Act,** any **Fair Labor Standards Act Violation,** or any **Wrongful Third Party Act**.

All other terms and conditions of this **Policy** remain unchanged. This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

# AMENDMENT OF PRIOR OR PENDING LITIGATION EXCLUSION

It is hereby agreed that the Directors and Officers **Coverage Part**, Section IV. EXCLUSIONS, Subsection A. "Prior or Pending Litigation" is deleted and replaced by the following:

Prior or Pending Litigation

Any litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured,** or any such action based upon the same or essentially the same facts, circumstances, matters, situations, transactions or events underlying or alleged therein which was pending on or prior to the effective date of this **Policy**;

provided that, if this **Policy** is a renewal of a **Policy** previously issued by the **Company** in a continuous succession of **Policies** with no lapses in coverage, the effective date of this **Policy** will mean the effective date of the first **Policy** issued by the **Company** in such succession of **Policies.**

It is also agreed that the Employment Practices **Coverage Part** (if purchased), Section III. EXCLUSIONS, Subsection B. "Prior or Pending Litigation" is deleted and replaced by the following:

Prior or Pending Litigation

Any litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured,** or any such action based upon the same or essentially the same facts, circumstances, matters, situations, transactions or events underlying or alleged therein which was pending on or prior to the effective date of this **Policy**;

provided that, if this **Policy** is a renewal of a **Policy** previously issued by the **Company** in a continuous succession of **Policies** with no lapses in coverage, the effective date of this **Policy** will mean the effective date of the first **Policy** issued by the **Company** in such succession of **Policies.**

It is also agreed that the Fiduciary Liability **Coverage Part** (if purchased), Section III. EXCLUSIONS, Subsection B. "Prior or Pending Litigation" is deleted and replaced by the following:

| | |
|---|---|
| Prior or Pending Litigation | Any litigation, demand, claim, arbitration, decree, judgment, proceeding, or investigation against any **Insured,** or any such action based upon the same or essentially the same facts, circumstances, matters, situations, transactions or events underlying or alleged therein which was pending on or prior to the effective date of this **Policy**;<br><br>provided that, if this **Policy** is a renewal of a **Policy** previously issued by the **Company** in a continuous succession of **Policies** with no lapses in coverage, the effective date of this **Policy** will mean the effective date of the first **Policy** issued by the **Company** in such succession of **Policies.** |

All other terms and conditions of this **Policy** remain unchanged. This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

This Endorsement modifies insurance provided under the following:

**NON PROFIT MANAGEMENT LIABILITY POLICY**

# BIOMETRIC INFORMATION EXCLUSION

This endorsement amends the following **Coverage Parts**, if purchased and attached to this **Policy:**

Directors and Officers Coverage Part (DO-100), Section III, DEFINITIONS; and
Employment Practices Liability Coverage Part (DO-101), Section II, DEFINITIONS; and
Fiduciary Liability Coverage Part (DO-102), Section II, DEFINITIONS

are amended by the addition of the following:

**Biometric Identifier(s)** means a retina or iris scan, fingerprint, voiceprint**,** deoxyribonucleic acid (DNA), scan of hand or face geometry, or any physical, physiological, biological or behavioral characteristic of an individual, or anything else that could be perceived as biologically unique to an individual.

**Biometric Information** means any **Confidential Employee Information**, or any other information, regardless of how it is captured, converted, stored, or shared, based on an individual's **Biometric Identifier(s)** used to identify an individual.

The Employment Practices Coverage Part (DO-101), Section II. DEFINITIONS, **Wrongful Employment Act**, is deleted in its entirety and replaced by the following:

**Wrongful Employment Act** means any actual or alleged:

1. violation of any federal, state or local laws (whether statutory or common) prohibiting discrimination in employment based on a person's race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any protected military status, or any other status that is protected pursuant to any such laws;
2. **Harassment**;
3. **Retaliation**;
4. wrongful: termination, dismissal or discharge of employment, whether actual or constructive;

5. wrongful: demotion; denial of tenure; failure or refusal to hire or promote; denial of seniority; failure to employ; or wrongful or negligent employee reference;
6. wrongful employment-related: misrepresentation; defamation, humiliation, libel or slander; negligent evaluation; wrongful discipline; wrongful deprivation of career opportunity; negligent retention, supervision, hiring or training; emotional distress, mental anguish, invasion of privacy or false imprisonment; but only when alleged as part of a C**laim** for an act described in 1. through 5. above;
7. wrongful failure to adopt or enforce consistent employment-related corporate workplace policies and procedures arising from 1. through 6. above;
8. breach of any express or implied contract, including any contract arising out of any personnel manual, employee handbook, policy statement or other representation;

committed or allegedly committed by an **Organization** or by an **Individual Insured** while acting in his or her capacity as such by any means including the internet, social media, email, or telecommunications systems.

The Directors and Officers Coverage Part (DO-100), Section IV, EXCLUSIONS, A. and Employment Practices Liability Coverage Part (DO-101), Section III, EXCLUSIONS, Subsection B. and Fiduciary Liability Coverage Part (DO-102), Section III, EXCLUSIONS, Subsection B.;

are amended by the addition of the following;

| | |
|---|---|
| Biometric Information | violation of any law that regulates or restricts the collection, maintenance, storage, use, safeguarding, handling, retention, disposal, notifications, disclosures or authorizations related to **Biometric Information**; or any actual or alleged unauthorized collection, maintenance, storage, use, safeguarding, handling, retention, disposal, notifications, disclosures or authorizations of **Biometric Information**, or any other improper use thereof. |

All other terms and conditions of this **Policy** remain unchanged. This endorsement is part of your **Policy** and takes effect on the effective date of your **Policy** unless another effective date is shown.

In consideration of the payment of the premium and reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** and subject to all the provisions of this **Policy**, the **Company** and the **Insureds** agree as follows:

**NOTICE**: This is a Claims Made Policy. This means the **Company** will cover only those **Claims** first made against the **Insured** during the **Policy Period** or, where applicable, the Extended Reporting Period.

If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any **Coverage Part**, the terms and conditions of such **Coverage Part** shall control for the purposes of that **Coverage Part**.

Any bolded term in a **Coverage Part** that is defined in these General Terms and Conditions shall have the meaning set forth in these General Terms and Conditions. Any bolded term in a **Coverage Part** that is defined in that **Coverage Part** shall have the meaning set forth in such **Coverage Part**.

The descriptions in the headings and subheadings of this **Policy** are solely for convenience and form no part of the terms and conditions of coverage, and do not serve to express, confirm, alter or provide coverage.

---

I. DEFINITIONS

**Application** means:

1. an application and any materials submitted for this **Policy**; and
2. an application and any materials submitted for all previous **Policies** issued by the **Company** providing uninterrupted coverage.

The content of 1. and 2. above are incorporated by reference in this **Policy** as if physically attached hereto.

**Claim** shall have the meaning as defined in the applicable **Coverage Part**.

**Company** means the insurance company identified in the Policy Declarations.

**Coverage Part** means individually or collectively, as applicable, the purchased coverage parts as set forth in the Policy Declarations as included and attached to and made a part of this **Policy**.

| | |
|---|---|
| **Defense Costs** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Domestic Partner** | means any natural person qualifying as a domestic partner under the provision of any applicable federal, state or local laws. |
| **Employee** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Financial Impairment** | means:<br><br>1. the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator, creditors committee or similar official to take control of, supervise, manage or liquidate the **Organization** and provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization** to indemnify an **Individual Insured** for a **Loss**; or<br>2. the **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country. |
| **Insured** | means any **Organization** and any **Individual Insured**. |
| **Individual Insured** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Interrelated Wrongful Acts** | means any **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events, or that are logically or causally connected by reason of any common or related series of facts, circumstances, situations, transactions or events. |
| **Loss** | shall have the meaning as defined in the applicable **Coverage Part**. |
| **Management Control** | means:<br><br>1. control of more than fifty percent (50%) of the voting rights representing the right to appoint, elect, or designate the majority of the board of directors, board |

of trustees, or board of managers; or
2. control of exactly fifty percent (50%) of the voting rights representing the right to appoint, elect, or designate the majority of the board of directors, board of trustees, or board of managers; and pursuant to a written contract solely controls the management and operations of such entity.

**Named Insured** means the entity named in Item 1. of the Policy Declarations.

**Organization** means:

1. the **Named Insured** and any **Subsidiary**; and
2. any entity as debtor in possession under United States bankruptcy law or equivalent status under the law of any other jurisdiction.

**Plan** shall have the meaning as defined in the applicable **Coverage Part**.

**Policy** means collectively the Policy Declarations, General Terms and Conditions, applicable **Coverage Parts**, applicable endorsements, and the **Application**.

**Policy Period** means the period of time from the effective date and time of this **Policy** to the date and time of expiration as shown in the Policy Declarations, or its earlier cancellation or termination date. If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein.

**Policy Year** means the period of one (1) year following the effective date of the **Policy Period** or any subsequent one-year anniversary thereof; or

In the event the **Policy** expires less than one (1) year following the effective date of the **Policy Period**; or more than one (1) year but less than two (2) years following the effective date of the **Policy Period**; then **Policy Year** shall mean any such period.

**Subsidiary** means:

1. any not-for-profit entity in which the **Named Insured** has **Management Control** directly or indirectly through one or more **Subsidiaries** on or before the

effective date of this **Policy**; and is disclosed as a **Subsidiary** in an **Application** to the **Company**; or

2. any other entity added as a **Subsidiary** by written endorsement to this **Policy**.

**Takeover** means:

1. the acquisition by another entity or person or group of entities or persons acting in concert of:
   a. the **Management Control** of the **Named Insured**; or
   b. the acquisition of more than fifty percent ( 50%) of the total consolidated assets of the **Named Insured** as of the date of the **Named Insured's** most recent consolidated financial statements prior to such acquisition;
2. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity;
3. the consolidation of the **Named Insured** with another entity; or
4. the loss, forfeiture, or suspension of the **Named Insured's** tax exempt status.

**Wrongful Act** shall have the meaning as defined in the applicable **Coverage Part**.

---

## II. EXTENDED REPORTING PERIOD

Right to Purchase

If the **Policy** expires, is cancelled or not renewed for any reason other than non-payment of premium, then the **Named Insured** shall have the right to purchase an Extended Reporting Period to report to the **Company**, as soon as practicable prior to the expiration date of the purchased Extended Reporting Period, any **Claim** against an **Insured**.

An Extended Reporting Period shall only apply to **Claims** arising from a **Wrongful Act** which was actually or allegedly committed before the date of expiration, cancellation or non-renewal of this **Policy**, or prior to the effective date of any **Takeover**. For the purpose of this clause, the offer of renewal terms and conditions or premiums by the **Company** different from those in effect prior to renewal shall not constitute a refusal to renew.

Options

The additional premium for the Extended Reporting Period shall be a percentage of the total annual premium as shown in the Policy Declarations. The **Named Insured** may elect any one of the following options:

1. Twelve (12) month period - 30% of the annual premium;
2. Twenty Four (24) month period - 75% of the annual premium; or
3. Thirty Six (36) month period - 120% of the annual premium.

The Extended Reporting Period begins on the expiration date of the **Policy**, or if cancelled or non-renewed, the effective date of such cancellation or non-renewal of the **Policy**.

Payment & Notice to the Company

As a condition precedent to the right to purchase an Extended Reporting Period, the total earned premium for this **Policy** must have been paid to the **Company**. Any premium paid with respect to an Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period. The right to elect the Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium as set forth above, is received by the **Company** within sixty (60) days of the effective date of the expiration, nonrenewal or cancellation of this **Policy**.

Extended Reporting Period Limits & Other Insurance

The Extended Reporting Period will not provide a new, separate or additional Limit of Liability. The remainder of the Limit of Liability applicable to the **Policy Year** in effect as of the effective date of the expiration, cancellation, or non-renewal is the maximum Limit of Liability for all **Claims** reported during the Extended Reporting Period.

---

## III. DEFENSE & SETTLEMENT

Duty To Defend

The **Company** shall have the right and duty to defend any **Claim** covered by this **Policy** even if the allegations are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel of its choice with respect to such **Claim.** The **Company's** obligation to defend any **Claim** or pay any **Loss** or **Defense Costs** shall be completely

fulfilled and extinguished if the applicable Limit of Liability has been exhausted by payment of **Loss**.

Consent to Settle

The **Company**, as it deems necessary, has the right to investigate, adjust, defend, appeal and, with the consent of the **Insured**, negotiate the settlement of any **Claim** whether within or in excess of the Retention. If the **Insured** refuses to consent to a settlement recommended by the **Company**, the **Company's** obligation to the **Insured** for **Loss** and **Defense Costs** attributable to such **Claim** shall be limited to:

a. The amount of the covered **Loss** in excess of the Retention which the **Company** would have paid in settlement at the time the **Insured** first refused to settle; plus
b. covered **Defense Costs** incurred up to the date the **Insured** first refused to settle; plus
c. eighty percent (80%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

It is understood that payment of a., b. and c. above is the limit of the **Company's** liability under this **Policy** for any **Claim** in which the **Insured** fails or refuses to consent to the **Company's** settlement recommendation, subject at all times to Section IX. LIMITS OF LIABILITY and Section X. RETENTIONS AND PRESUMPTIVE INDEMNIFICATION of these General Terms and Conditions. The remaining twenty percent (20%) of **Loss** and **Defense Costs** in excess of the amount referenced in a. and b. above shall be the obligation of the **Insured**.

In no event shall the **Company** be obligated to pay any **Loss** or **Defense Costs** after the applicable Limit of Liability shown in the Policy Declarations has been exhausted by payment of **Loss**.

Consent of the Company

The **Insured** shall not demand or agree to arbitration of any **Claim** without the **Company's** written consent. The **Insured** shall not, except at personal cost, make any offer or payment, admit any liability, settle any **Claim**, assume any obligation, or incur any expense without the **Company's** written consent.

Cooperation

The **Insured** agrees to cooperate with the **Company** with respect to all **Claims**, and provide such assistance and information as the **Company** may reasonably request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by the **Company's** representative, under oath if required, and shall attend hearings, depositions, trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure under this **Policy**.

Papers/Documents

The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the completion of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** name, and shall provide all other assistance and cooperation which the **Company** may reasonably require.

## IV. ALLOCATION OF DEFENSE COSTS

If a **Claim** is made against an **Insured** for both **Loss** that is covered by this **Policy** and loss that is not covered by this **Policy**, the **Company** will pay as follows:

1. One hundred percent (100%) of **Defense Costs** on account of such **Claim**; and

2. all remaining loss from such **Claim** shall be apportioned between covered **Loss** and uncovered loss based on the relative legal exposures of the parties to such matters.
3. Items 1. and 2. above of this Section IV. shall not apply to any **Insured** for whom coverage is excluded pursuant to Section VII. REPRESENTATIONS AND SEVERABILITY.

---

## V. NOTICE AND CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Company**. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

Written Notice of a Claim

1. As a condition precedent to exercising any right to coverage under this **Policy**, the **Insured** shall give to the **Company** written notice of a **Claim** as soon as practicable after any Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chairperson, Executive Director, Human Resources Manager, In-House General Counsel, Managing Member or Fiduciary of any **Plan** becomes aware of such **Claim**, however:
   a. if the **Policy** expires, is cancelled or is non-renewed and no Extended Reporting Period is purchased, no later than ninety (90) days after the expiration date or the effective date of such cancellation or non-renewal; or
   b. if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period.

However, if the **Policy** is cancelled for non-payment of premium, notice shall be provided by the **Insured** to the **Company** no later than the effective date of cancellation.

2. Coverage for a **Claim** reported to the **Company** during the automatic 90 day period noted in 1. a. above shall only apply if the **Claim** is first made prior to the date of the **Policy** expiration, cancellation, or non-renewal.

Written Notice of a Circumstance

1. If during the **Policy Period**, or any applicable Extended Reporting Period, the **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the **Company** as soon as practicable during the **Policy Period**, or Extended Reporting Period if applicable, in which the **Insured** first becomes aware of such circumstances, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the **Company**. Such subsequent **Claim** must be reported to the **Company** in accordance with this Section V. NOTICE AND CLAIM REPORTING PROVISIONS, "Written Notice of Claim" above.
2. When reporting a circumstance to the **Company**, an **Insured** shall give the names of any potential claimant; a description of the specific circumstances that could give rise to a **Claim**; the identity of the specific **Insureds** allegedly involved in such circumstance; the nature of the potential damages (monetary and non-monetary); and the specifics as to how the **Insureds** first became aware of such circumstance.

Interrelated Claims

More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which shall be deemed made on the earlier of:

1. the date on which the earliest **Claim** was first made; or
2. the first date valid notice was given by the **Insured** to the **Company**, in accordance with applicable reporting provisions, under this **Policy** or under any prior policy, of any **Wrongful Act** or any fact, circumstance, situation, transaction or event which underlies such **Claim**.

---

VI. CANCELLATION OR NON-RENEWAL

Cancellation by the Insured

This **Policy** may be cancelled by the **Named Insured** by either surrender thereof to the **Company** at its address stated in the Policy Declarations or by mailing to the **Company** written notice requesting cancellation and in either case stating when thereafter such

cancellation shall be effective. Earned premium shall be computed pro rata at the time cancellation is effected or as soon as practicable thereafter.

Cancellation By the Company

The **Company** may cancel this **Policy** only in the event of the **Insured's** failure to pay the premium when due. The **Company** will mail to the **Named Insured**, written notice stating when cancellation shall take effect. The effective date of such cancellation shall not be less than twenty (20) days after the date of mailing. Earned premium shall be computed pro rata at the time cancellation is effected or as soon as practicable thereafter.

Non-Renewal

In the event the **Company** non-renews this **Policy**, the **Company** shall mail to the **Named Insured**, not less than sixty (60) days prior to the end of the **Policy Period**, written notice of non-renewal. Such notice shall be binding on all **Insureds**.

Delivery of Notice

The **Company** shall mail notice of cancellation or non-renewal with a certificate of mailing stating the effective date of cancellation or non-renewal which shall become the end of the **Policy Period**. Mailing of such notice shall be sufficient notice of cancellation or non-renewal.

---

VII. REPRESENTATIONS AND SEVERABILITY

Representations

The **Insured** represents that the particulars and statements contained in the **Application** are true and agree that:

1. those particulars and statements are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of the **Policy**;
2. those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and
3. the **Policy** is issued in reliance upon the truth of such representations.

Severability of Application

An **Application** for coverage shall be construed as a separate **Application** for coverage by each **Individual Insured**. With respect to the particulars and statements

contained in the **Application**, no fact pertaining to or knowledge possessed by any **Individual Insured** shall be imputed to any other **Individual Insured** for the purpose of determining if coverage is available.

In the event that such **Application** contains any misrepresentations which materially affects either the acceptance of the risk or the hazard assumed by the **Company** under this **Policy**, then no coverage shall be afforded for any **Claim** based upon, arising out of, related to or in consequence of any such misrepresentation with respect to:

1. any **Individual Insured** who knew of such misrepresentations or knew of the facts or circumstances relating to such misrepresentations, or any **Organization** to the extent it indemnifies any such **Individual Insured**. Such knowledge possessed by such **Individual Insured** shall not be imputed to any other **Individual Insured;** or
2. any **Organization** if any past or present Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chairperson, Executive Director, Human Resources Manager, In-House General Counsel, Managing Member or Fiduciary of any **Plan** or any equivalent position of the **Named Insured**, or the signer of the **Application**, knew of such misrepresentations or knew of the facts or circumstances relating to such misrepresentations.

---

## VIII. CHANGES IN EXPOSURE

Creation, Acquisition of or Merger with Another Entity

1. If, after the effective date of this **Policy**:
   a. the **Organization** creates, acquires, consolidates or merges with another nonprofit entity incorporated under the laws of a jurisdiction within the territorial United States, (hereafter referred to as "other entity") such that the **Organization** is the surviving entity, and if as a result of such creation, acquisition, consolidation or merger, the other entity becomes a **Subsidiary** of the **Organization**, then coverage shall be provided for the other entity as an **Insured** solely for **Wrongful Acts** committed or

allegedly committed after the effective date of such creation, acquisition, consolidation or merger. The **Insured** shall disclose full particulars of such a change to the **Company** as soon as practicable but not later than the expiration date of the **Policy Year**, or effective date of cancellation or non-renewal of this **Policy**.

b. However, if at the time of an event described in Paragraph 1, a., above:

   i. the assets of the other entity exceed thirty five percent (35%) of the total assets of the **Organization** as reflected in the **Organization's** most recent annual financial statements; or

   ii. if the Employment Practices Liability Coverage Part is attached to this **Policy,** the total number of employees of the other entity exceeds thirty five (35%) of the total number of **Employees** of the **Organization** immediately prior to such event, then:

   the **Named Insured** shall provide to the **Company** written notice of such creation, acquisition, consolidation or merger, containing full details thereof, as soon as practicable but within sixty (60) days of such event. The **Company**, at its sole discretion, may require additional premium and may alter the terms, conditions or limitations of coverage. The **Company** reserves the right to refuse any extension of coverage to such entity.

2. If, after the effective date of this **Policy**, the **Organization** creates, acquires, consolidates or merges with a for-profit entity, or any entity incorporated outside of the territorial United States, such that the **Organization** is the surviving entity, and if as a result of such creation, acquisition, consolidation or merger, such for-profit or foreign entity becomes a **Subsidiary** of the **Organization**, then:

   the **Named Insured** shall provide to the

**Company** written notice of such creation, acquisition, consolidation or merger, containing full details thereof, as soon as practicable but within sixty (60) days of such event. The **Company**, at its sole discretion, may require additional premium and may alter the terms, conditions or limitations of coverage. The **Company** reserves the right to refuse any extension of coverage to such entity.

Cessation of Subsidiaries

If during the **Policy Period** any **Subsidiary** ceases to be a **Subsidiary**, then coverage under this **Policy** shall continue for such **Subsidiary** and its **Individual Insureds** until the expiration of this **Policy** or the last **Policy** in an uninterrupted series of policies issued by the **Company**, but solely for **Claims** arising out of **Wrongful Acts** committed or allegedly committed by such **Subsidiary** or its **Individual Insureds** while such **Subsidiary** was a **Subsidiary** and prior to the effective date of such cessation. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the effective date of cessation.

Takeover of the Named Insured

In the event of a **Takeover** of the **Named Insured:**

1. coverage under this **Policy** shall continue until the earlier of:
   a. the expiration of the **Policy Year**; or
   b. if the **Policy** is cancelled or non-renewed, the effective date of cancellation or non-renewal;

   but only with respect to **Claims** arising out of **Wrongful Acts** that occurred or allegedly occurred prior to the effective date of the **Takeover**. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the date of **Takeover**;

2. the **Named Insured** shall give the **Company** written notice of the **Takeover** as soon as practicable, but not later than sixty (60) days after the effective date of the **Takeover**; and
3. the premium for the **Policy Year** in which the **Takeover** occurred shall be deemed to be fully

earned. The **Named Insured** shall have the right to purchase an Extended Reporting Period, subject to Section II. EXTENDED REPORTING PERIOD herein, to report **Claims** arising out of **Wrongful Acts** occurring prior to the effective date of any **Takeover**.

Merger, Sale, Transfer or Termination of a Plan

If after the inception date of the Fiduciary Liability **Coverage Part,** or the date the Fiduciary Liability Coverage Endorsement is added to this **Policy**:

1. the sponsorship of a **Plan** is transferred so that an **Organization** is no longer the sole employer sponsor of such **Plan**;
2. a **Plan** is merged with another plan for which coverage is not afforded under the Fiduciary Liability **Coverage Part**;
3. a **Plan** is terminated or sold; or
4. the Pension Benefit Guaranty Corporation (PBGC) becomes the Trustee of a **Plan**;

then:

a. in the case of paragraphs 1., 2. and 3. above, the Fiduciary Liability **Coverage Part** or the Fiduciary Liability Coverage Endorsement, as applicable, shall continue to apply to such transferred, merged, terminated or sold **Plan**, but solely for **Claims** based upon or arising out of **Wrongful Acts** that occurred or allegedly occurred prior to the date of such transfer, merger, termination or sale. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the date of merger, transfer, termination or sale of any **Plan** as described in paragraphs 1., 2. and 3. above; or
b. in the case of paragraph 4. above, the Fiduciary Liability **Coverage Part** or the Fiduciary Liability Coverage Endorsement shall continue to apply to such **Plan** for those who were **Insureds** at the time the PBGC became the Trustee of such **Plan** but solely for **Claims** based upon or arising out of **Wrongful Acts** that occurred or allegedly occurred prior to the date the PBGC became

the Trustee of such **Plan**. There shall be no coverage for **Claims** arising out of actual or alleged **Wrongful Acts** occurring on or after the date the PBGC becomes the Trustee of any **Plan**.

Cancellation of the Policy

If the **Named Insured** requests cancellation of this **Policy** as a result of a "Creation, Acquisition of or Merger with Another Entity", "Cessation of Subsidiaries", or "Takeover of the Named Insured", the **Company** shall compute earned premium on a pro rata basis and return any unearned premium to such entity as of the effective date of such cancellation as long as notice of the event is provided to the **Company** as soon as practicable but not later than sixty (60) days after such event, together with such information as the **Company** may require.

---

## IX. LIMITS OF LIABILITY

"Each Claim"

The "Each Claim" Limit of Liability shown on the Policy Declarations is the **Company's** maximum liability for **Loss** for each **Claim** to which the applicable **Coverage Part** applies, during each **Policy Year**.

"In the Aggregate"

The "In the Aggregate" Limit of Liability shown on the Policy Declarations is the **Company's** maximum liability for **Loss** for all **Claims** to which the applicable **Coverage Part** applies, during each **Policy Year**.

Policy Year Limits

The Limits of Liability for any **Policy Year** may not be aggregated or transferred, in whole or in part, so as to provide any additional coverage with respect to **Claims** first made or deemed made, as provided in Section V. NOTICE AND CLAIM REPORTING PROVISIONS of these General Terms and Conditions during any other **Policy Year**. If the applicable Limits of Liability for any **Policy Year** are exhausted, the **Company's** obligation for that **Policy Year** shall be deemed completely fulfilled and extinguished.

Extended Reporting Period Limits

The Extended Reporting Period will not provide a new, separate or additional Limit of Liability. The remainder of the Limit of Liability applicable to the **Policy Year** in effect as of the date of expiration, cancellation, or non-renewal is the maximum Limit of Liability for all

**Claims** reported during the Extended Reporting Period.

Defense Costs

**Defense Costs** shall be in addition to the Limits of Liability for each **Coverage Part** purchased as shown on the Policy Declarations, unless as otherwise provided within that **Coverage Part** or by endorsement.

Interrelated Claims

More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** pursuant to Section V. NOTICE AND CLAIM REPORTING PROVISIONS, "Interrelated Claims" and shall be subject to the Limit of Liability in effect when the **Claim** was first made.

---

X. RETENTIONS AND PRESUMPTIVE INDEMNIFICATION

Retentions

Retentions set forth in the Policy Declarations for each **Coverage Part** shall apply per **Claim** per **Policy Year** under each respective **Coverage Part**.

If more than one Retention applies to any one **Claim** then each applicable Retention shall be applied to the applicable part of such **Claim**, but the sum of such Retentions shall not exceed the highest of such applicable Retentions.

**Claims** shall be subject to the Retention applicable to the **Policy Year** during which the **Claims** are first made as provided in Section V. NOTICE AND CLAIM REPORTING PROVISIONS.

Except as otherwise provided by Section VII. TIMELY NOTICE AND RESOLUTION INCENTIVE of the Directors and Officers **Coverage Part**:

1. the **Company** shall be liable to pay only **Loss** and **Defense Costs** in excess of the applicable Retention for the **Coverage Part** to which the **Claim** applies;
2. the **Company** shall have no obligation to pay any part or all of such Retention on the **Insured's** behalf; and
3. if the **Company**, at its sole discretion, elects to pay any part of or all of such Retention, the **Insured** agrees to repay such amounts to the **Company** upon demand.

Presumptive Indemnification

Regardless of whether **Loss** or **Defense Costs** resulting from any **Claim** against an **Individual Insured** is actually indemnified by the **Organization**, the applicable Retention set forth in the Policy Declarations shall apply to any **Loss** and **Defense Costs** if indemnification of the **Individual Insured** by the **Organization** is legally permissible. The certificate of incorporation, charter, articles of association or other organizational documents of the **Organization**, including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Individual Insured** to the fullest extent permitted by law.

However, if an **Individual Insured** is not indemnified for **Loss** or **Defense Costs** solely by reason of:

1. **Financial Impairment**; or
2. a good faith determination by the **Organization** that such indemnification is not permitted by common or statutory law; then

an **Individual Insured's** Retention for this **Coverage Part** shall be amended to $0.

---

XI. SPOUSAL AND DOMESTIC PARTNER EXTENSION

If a **Claim** against an **Individual Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Individual Insured** solely by reason of:

1. such spousal or **Domestic Partner** status; or
2. such spouse's or **Domestic Partner's** ownership interest in property or assets that are sought as recovery for **Wrongful Acts**; then

any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which the **Individual Insured** becomes legally obligated to pay as a result of the **Claim.**

This extension of coverage shall not apply to the extent a **Claim** alleges any **Wrongful Act**, error, omission, misstatement, misleading statement or neglect or breach

of duties by such spouse or **Domestic Partner**.

## XII. SUBROGATION

In the event of payment under this **Policy**, the **Company** shall be subrogated to the **Insureds'** rights of recovery. The **Insured** shall do everything necessary to secure such rights, including the execution of such documents necessary to enable the **Company** to effectively bring suit in the name of any **Company**.

In no event, however, shall the **Company** exercise its rights to subrogation against an **Individual Insured** under this **Policy** unless such **Individual Insured**:

1. has been convicted of a deliberate criminal act; or
2. has been determined by a final adjudication adverse to the **Individual Insured** to have committed a deliberate fraudulent act, or to have obtained any profit, advantage or remuneration to which such **Individual Insured** was not legally entitled.

In the event the **Company** shall for any reason pay indemnifiable **Loss** on behalf of an **Individual Insured**, the **Company** shall have the contractual right hereunder to recover from the **Organization** or any **Subsidiary** the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Organization** or any **Subsidiary** and shall be subrogated to rights of the **Individual Insureds** hereunder.

## XIII. CHANGES

Notice to any agent or knowledge by any agent shall not affect a waiver or change in any part of this **Policy** or stop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this **Policy** be waived or changed except by an endorsement, issued by the **Company** to form a part of this **Policy**.

## XIV. AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this **Policy**, the **Insured** agrees that the **Named Insured** shall act on behalf of all **Insureds** with respect to:

1. the payment of premiums or the receipt of any return premiums that may become due under the **Policy**;
2. the cancellation or non-renewal of this **Policy**;
3. the effecting of any changes to the **Policy** or purchasing of an Extended Reporting Period; or
4. the giving and receiving of all notices and correspondence.

Any notice given to the **Named Insured** by the **Company** pursuant to Section VI. CANCELLATION OR NON-RENEWAL shall be deemed to be notice to all **Insureds**.

---

XV. ASSIGNMENT

Assignment of interest under this **Policy** shall not bind the **Company** until the **Company's** consent is endorsed hereon.

---

XVI. OTHER INSURANCE

This **Policy** is excess of other valid and collectable insurance, unless such other insurance is specifically written to be in excess of this **Policy**. For purposes of this provision, "other valid and collectable insurance" means insurance provided by an entity or organization other than the **Company**.

When it is determined that both this insurance and other insurance or self-insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the **Company** shall not be liable under this **Policy** for a greater proportion of the **Loss** and **Defense Costs** than the applicable Limit of Liability under the **Policy** for such **Loss** and **Defense Costs** bears to the total applicable Limit of Liability of all valid and collectible insurance against such **Claims**.

---

XVII. TERMS OF POLICY CONFORMED TO STATUTE

Terms of this **Policy** which are in conflict with the statutes of the state or territory wherein this **Policy** is

issued are hereby amended to conform to such statutes.

## XVIII. ACTION AGAINST THE COMPANY

Compliance

No action shall lie against the **Company** unless, as a condition precedent thereto, there has been full compliance with all of the terms of this **Policy**, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by the **Insured's** written agreement, the claimant or the claimant's legal representative, and the **Company**.

Rights to Recover

Any person or the legal representatives thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **Policy** to the extent of the insurance afforded by this **Policy**. No person or entity shall have any right under this **Policy** to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Company** be impleaded by the **Insured** or the **Insured's** legal representatives. Bankruptcy or insolvency of the **Insured** or the **Insured's** successors in interest shall not relieve the **Company** of its obligations hereunder.

## XIX. POLICY TERRITORY

This **Policy** shall apply worldwide.

## XX. COORDINATION OF COVERAGE

Subject always to the applicable Limit of Liability, should two or more **Coverage Parts** apply to the same **Claim**, the **Company** will not pay more than the actual **Loss** incurred by the **Insureds**.

## XXI. ACCEPTANCE

This **Policy** embodies all agreements existing between the parties hereunder or any of their agents relating to this insurance.

## XXII. LIBERALIZATION

If within forty-five (45) days of binding this **Policy**, the **Company** broadens coverage under any **Coverage Part** or the General Terms & Conditions attached to this

**Policy**, and;

1. such broadened coverage applies to policies in the state or territory in which this **Policy** is written;
2. the effective date of the policies which are to receive the broadened coverage is after the effective date of this **Policy**; and
3. there is no additional premium charged for such broadened coverage;

then the **Company** shall apply the broadened coverage to this **Policy** as applicable for no additional premium, but only for a **Wrongful Act** which first occurs after the effective date of such broadened coverage.

# INSURANCE

# POLICY

## UNITED STATES LIABILITY INSURANCE GROUP

A STOCK COMPANY

A BERKSHIRE HATHAWAY COMPANY

1190 Devon Park Drive
Wayne, PA 19087-2191
888-523-5545 – USLI.COM

This policy jacket together with the policy declarations, coverage forms and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

# INSURANCE POLICY

## Read your policy carefully!

**In Witness Whereof**, the company has caused this Policy to be executed and attested. Where required by law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President