**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION NO. 9 EDUCATION FUND,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 24-7339 (MAS) (JTQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon cross-motions for summary judgment filed by Plaintiff Plumbers & Pipefitters Local Union No. 9 Education Fund ("Plaintiff" or the "Fund") and Defendant United States Liability Insurance Company ("Defendant" or "USLI") regarding Defendant's insurance coverage obligations. (ECF Nos. 21, 22.) Plaintiff opposed Defendant's motion (ECF No. 27), and Defendant opposed Plaintiff's motion (ECF No. 28). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's motion is denied, and Plaintiff's motion is granted.

## I. BACKGROUND

The Court recites only the uncontested facts necessary to contextualize the present cross-motions. All other material facts in this matter are contested and will be recited where applicable in the Court's analysis below.

## A. Factual Background

### *1. The Insurance Policy*

The Fund is a Taft-Hartley Multiemployer Fund established and maintained pursuant to Section 302(c)(6) of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 186(c)(6), and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. (Joint Statement of Facts ("JSOF") ¶ 1, ECF No. 33.) USLI is an insurance company with its principal place of business located in Wayne, Pennsylvania. (*Id.* ¶ 2.)

In July 2023, USLI issued a "Claims Made" Non-Profit Directors and Officers Liability Policy to the Fund, number NDO1070309N (the "Policy"), with a coverage period of July 6, 2023, to July 6, 2024. (JSOF ¶¶ 3, 4.) The Policy consists of two coverage parts: (1) Directors and Officers Coverage Part (the "D&O Coverage")[1]; and (2) Employment Practices Coverage Part (the "EP Coverage"). (*Id.* ¶ 5.)

The EP Coverage reads as follows:

> Except as otherwise provided in Section III. EXCLUSIONS, [USLI] and [the Fund] agree as follows:
>
> [USLI] will pay, on behalf of an Individual Insured, Loss and Defense Costs resulting from a Claim first made against an Individual Insured during the Policy Period or during any Extended Reporting Period, if applicable, by or on behalf of:
>
> A. Employment Practices Liability[:] any Employee or applicant for employment for a Wrongful Employment Act; or
>
> B. Third Party Liability[:] any natural person, other than an Employee, for a Wrongful Third Party Act.

[1] "The Fund does not challenge USLI's coverage disclaimer under the [D&O] Coverage Part of the Policy." (JSOF ¶ 80.)

(*Id.* ¶ 17 (emphasis omitted).) Under the EP Coverage, a "Claim" includes "any . . . civil proceeding commenced by service of a complaint or similar pleading . . . received by, or brought or initiated against [the Fund] alleging a Wrongful Act[2], including any appeal therefrom." (*Id.* ¶ 18 (first and second alterations in original).) The term "Individual Insured" is defined as "any past, present or future . . . Executive [or] Employee." (*Id.* ¶ 23 (alterations in original).) The term "Defense Costs" is defined as: (1) "reasonable and necessary legal fees and expenses incurred by [USLI], or by any attorney designated by [USLI] to defend the [Fund]"; and (2) "all other fees, costs, costs of attachment or similar bonds . . . resulting from the investigation, adjustment, defense and appeal of a Claim." (*Id.* ¶ 19.) An "Employee" is defined in the EP Coverage as "any natural person whose labor or service is engaged and directed by the [Fund] while performing duties related to the conduct of the [Fund's] business and includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns[.]" (*Id.* ¶ 20.)

The term "Wrongful Employment Act" is defined as "any actual or alleged" act "committed or allegedly committed by [the Fund] or by an Individual Insured while acting in his or her capacity as such by any means including the internet, social media, email, or telecommunications systems[,]" such as:

> 1. violation of any federal, state or local laws (whether statutory or common) prohibiting discrimination in employment based on a person's race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any protected military status, or any other status that is protected pursuant to any such laws;
> 2. Harassment;
> 3. Retaliation;
> 4. wrongful: termination, dismissal or discharge of employment, whether actual or constructive;

[2] The term Wrongful Act is defined in the EP Coverage to mean "any Wrongful Employment Act or Wrongful Third Party Act." (JSOF ¶ 26.)

> 5. wrongful: demotion; denial of tenure; failure or refusal to hire or promote; denial of seniority; failure to employ; or wrongful or negligent employee reference;
> 6. wrongful employment-related: misrepresentation; defamation; humiliation, libel[,] or slander; negligent evaluation; wrongful discipline; wrongful deprivation of career opportunity; negligent retention, supervision, hiring[,] or training; emotional distress, mental anguish, invasion of privacy or false imprisonment;
> but only when alleged as part of a Claim for an act described in 1. through 5. above;
> 7. wrongful failure to adopt or enforce consistent employment-related corporate workplace policies and procedures arising from 1. through 6. above;
> 8. breach of any express or implied contract, including any contract arising out of any personnel manual, employee handbook, policy statement or other representation; or
> 9. unauthorized use or disclosure of Confidential Employee Information[.]

(*Id.* ¶ 27.) The term "Wrongful Third Party Act" is defined as any actual or alleged:

> 1. discrimination based on race, color, religion, creed, genetic information, age, gender or gender identity, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, any protected military status, or any other status that is protected pursuant to any federal, state[,] or local statutory or common law;
> 2. harassment of either a sexual nature or other unwelcome conduct; or
> 3. violation of civil rights relating to such discrimination or harassment;
>
> against any natural person, other than an Employee, committed or allegedly committed by [the Fund] or by an Individual Insured while acting in his or her capacity as such, by any means including the internet, social media or email, or telecommunications systems.

(*Id.* ¶ 28.)

The Policy also contains the following "Specific Person or Entity Exclusion" (the "SPE Exclusion") that applies to both the D&O Coverage and the EP Coverage:

> It is hereby agreed that this endorsement applies to all purchased Coverage Parts:
>
> The Company shall not be liable for Loss or Defense Costs in connection with any Claim:
>
> 1. brought by the person(s) or entity(ies) named below; or
> 2. brought against [the Fund] based upon, arising out of, directly or indirectly resulting from or in consequence of the activities, operations, acts[,] or failure to act of the following person(s) or entity(ies):
>
> Plumbers & Pipefitters Local #9[.]

(*Id.* ¶ 33 (emphasis added).)

### *2. The Underlying Lawsuit*

On or about October 31, 2023, Plaintiff was sued in the Superior Court of New Jersey in an action titled *Adam Bean v. Trustees of Princeton University, et al.*, Docket No. OCN-L-3194-21 (the "Underlying Lawsuit").[3] (*Id.* ¶ 66; *see* Ex. A to Compl. (the "Underlying Lawsuit's SAC"), ECF No. 1-1.) The Underlying Lawsuit's SAC alleges ten causes of action, some of which are alleged against the Fund, as well as other defendants.[4] (JSOF ¶¶ 65, 67.)

[3] On December 14, 2021, Adam Bean ("Bean") initially filed suit against Princeton University in the Underlying Lawsuit. (JSOF ¶ 34.) On February 3, 2022, Bean filed an amended complaint adding Local Union No. 9 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Local 9") as a named defendant. (*Id.* ¶¶ 35, 52.) Thereafter, Bean sought leave to file a second amended complaint which sought to, among other things, name the Fund and individuals as new defendants. (*Id.* ¶¶ 59, 60.) The Court granted Bean's motion to file a second amended complaint, and Bean filed the new operative complaint on or around October 31, 2023. (*Id.* ¶ 66.)

[4] The six causes of action alleged in part against the Fund in the Underlying Lawsuit include: (1) retaliation and interference in violation of the New Jersey Family Leave Act (the "NJFLA"); (2) discrimination in violation of the New Jersey Law Against Discrimination (the "NJLAD"); (3) retaliation in violation of the NJLAD; (4) tortious interference with prospective economic advantage; (5) constructive discharge; and (6) civil conspiracy. (JSOF ¶ 65.)

The parties agree that the following facts are alleged in the Underlying Lawsuit. First, "[t]he Fund provides apprenticeship training and continuing education for journey workers of the Local 9 [('Plumbers & Pipefitters Local #9' or 'the Union')] through the Joint Apprenticeship Training Committee ('JATC')." (*Id.* ¶ 61 (first alteration in original).) "Acting in concert and under the direction of [the Union], the Fund was [Bean's] 'employer' as that term is defined by the NJFLA . . . and NJLAD[.]" (*Id.* (third alteration in original).) After Bean was accepted into the Apprenticeship Program, "[he] became a member of the Union[,]" and "[a]s a participant in the Apprenticeship Program, [he] received his on-the-job training through his employment with Princeton University[.]" (*Id.* ¶ 68.) Bean alleged that "[a]s part of his on-the-job training, [he] was employed by Princeton, Facilities Operations Engineering, from on or about June 29, 2020[,] until on or about September 17, 2021, the date of his unlawful termination." (*Id.* ¶ 36 (first and second alterations in original).) On September 13, 2021, Bean "submitted a written request to Princeton for paternity leave[,]" and four days later, "Princeton terminated . . . Bean's employment."[5] (*Id.* ¶ 68.)

On November 9, 2021, Bean "wrote a letter to Princeton accusing it of wrongful termination in violation of the NJFLA." (*Id.*) On December 1, 2021, "in response to . . . Bean's allegation of wrongful termination against Princeton," the Trustees "made . . . Bean appear for an 'interrogation'" during which the Trustees "'reprimanded and criticized' . . . Bean and warned him that there would be 'ramifications' if he did not drop his allegations against Princeton." (*Id.*) Then again, on or around December 29, Bean was pulled out of the classroom by the Trustees "in an effort to further intimidate him into withdrawing the Charge and the recently filed Complaint

[5] In connection with the Princeton termination, Bean asserts allegations against two of the Fund's JATC Trustees (individually, "Maloney" and "Whalen," and collectively, the "Trustees") who are also named as co-defendants in the Underlying Lawsuit. (*Id.* ¶¶ 62-63, 65, 68.)

against Princeton." (*Id.*) On January 27, 2022, "Bean resigned from [the Fund's] apprenticeship program which . . . constitute[d] a constructive discharge by [the Union] from the program." (*Id.* ¶ 54.)

### 3. *USLI Disclaimed Coverage under the Policy*

On July 12, 2023, the Fund's counsel "place[d] USLI on notice under the Policy of the potential claims against the Fund as asserted by Bean in the proposed [Underlying Lawsuit's SAC]" by sending a letter with "[a] copy of the Motion for Leave" and "the proposed [Underlying Lawsuit's] SAC as an exhibit[.]" (*Id.* ¶¶ 69, 70.) USLI received the letter dated July 12, 2023, with attachments on the following day. (*Id.* ¶ 71.) Through e-mail correspondence dated July 18, 2023, "USLI advised [the Fund's counsel] that there was no coverage under the Policy for Bean's claims against the Fund, stating that '[t]he Policy contains an endorsement adding an exclusion that precludes coverage for any claim arising out of the acts or failure to act of [the Union], which is also named as a defendant in the lawsuit.'" (*Id.* ¶ 72.) On September 22, 2023, the Fund responded to USLI by e-mail correspondence "contest[ing] USLI's position that the [SPE] Exclusion precluded coverage and request[ing] that USLI issue a formal coverage position letter." (*Id.* ¶ 73.)

"On October 27, 2023, USLI issued a disclaimer letter to the Fund, . . . advising that there was no coverage available under the [D&O] Coverage Part based on the Employment Practices and Discrimination exclusions and that there was no coverage available under the [EP] Coverage Part based on the [SPE] Exclusion[.]" (*Id.* ¶ 74.) The Fund formally appealed USLI's decision on January 9, 2024, and USLI denied the appeal by e-mail correspondence dated January 11, 2024. (*Id.* ¶¶ 76, 78.) In that January 11, 2024, e-mail correspondence, USLI affirmed the position in the October denial correspondence and added that since Bean "was not an employee of the [the Fund]

and was an employee of the Union that is specifically excluded on the policy[,] there is no coverage." (*Id.* ¶ 79.)

### B. Procedural Background

Plaintiff initially filed suit against Defendant in the Superior Court of New Jersey Law Division, Monmouth County, on May 24, 2024, seeking a declaratory judgment on Defendant's duty to defend or indemnify Plaintiff under the Policy. (*See generally* Notice of Removal 1, ECF No. 1; Compl., ECF No. 1-1.) Defendant removed to this Court (*see generally* Notice of Removal) and then filed an Answer to the Complaint (*see generally* Answer, ECF No. 5). On July 9, 2025, the parties cross-moved for summary judgment seeking a declaratory judgment as to Defendant's insurance obligations. (*See generally* Pl.'s Mot. for Summary J., ECF No. 21; Def.'s Mot. for Summary J., ECF No. 22.) On July 30, 2025, Plaintiff and Defendant replied in opposition to the other's motion. (*See generally* Pl.'s Opp'n Br., ECF No. 27; Def.'s Opp'n Br., ECF No. 28.) On December 2, 2025, the Court issued a Memorandum Order administratively terminating the parties' cross-motions and requiring the parties to submit a joint statement of undisputed material facts. (Dec. 2, 2025, Mem. Order, ECF No. 30.) The parties complied with the Memorandum Order and submitted the joint statement on January 6, 2026. (*See generally* JSOF.) The Court thereafter reinstated the parties' cross-motions. (*See* Jan. 13, 2026, Text Order, ECF No. 34.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a)[6] provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir.

[6] Any references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

2000). A material fact raises a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248). In deciding a summary judgment motion, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met its threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). If the non-moving party fails to come forward with the requisite showing to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" then "there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249-50. Credibility determinations are the province of the fact finder. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary

judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III. DISCUSSION

Plaintiff moves for summary judgment, primarily arguing that there is no genuine dispute of material fact that: (1) USLI has a duty to defend the Fund in the Underlying Lawsuit; (2) USLI has not met its burden to show that the Underlying Lawsuit falls within the SPE Exclusion; and (3) USLI's application of the SPE Exclusion would render the EP Coverage under the Policy illusory. (*See generally* Pl.'s Moving Br., ECF No. 21.) Ultimately, Plaintiff seeks a declaratory judgment that: (1) there is coverage under the Policy's terms for the claims asserted against the Fund in the Underlying Lawsuit; and (2) USLI has a duty to defend and/or indemnify the Fund under the Policy for the claims asserted against it in the Underlying Lawsuit. (*See id.* at 2.)

Defendant moves for summary judgment arguing that the Fund's Complaint against USLI in this case should be dismissed in its entirety because the Policy's SPE Exclusion applies, and "USLI [therefore] does not have any obligation under the Policy to defend or indemnify the Fund" in the Underlying Lawsuit. (Def.'s Moving Br. 1, 15-19, ECF No. 22-15.) The Court first turns to the relevant principles of contract interpretation before discussing the SPE Exclusion.

### A. Interpretation of an Insurance Contract Under New Jersey Law[7]

Interpreting an insurance contract is a legal question to be resolved by the Court. *Rena, Inc. v. Brien*, 708 A.2d 747, 756 (N.J. Super. Ct. App. Div. 1998) (citation omitted); *see also Baron v. Nautilus Ins. Co.*, 747 F. Supp. 3d 697, 706 (D.N.J. 2024) ("[T]he interpretation of an insurance

[7] The parties are seemingly in agreement that New Jersey State law applies to this dispute. (*See* Pl.'s Moving Br. 12 n.3; Def.'s Moving Br. 15-17.)

policy is a question for the Court to decide as a matter of law." (citation omitted)). "In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citing *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001)); *see also Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) ("In considering the meaning of an insurance policy, [the court] interpret[s] the language 'according to its plain and ordinary meaning.'" (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992))). "If the plain language of the policy is unambiguous, [the Court] will not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1075 (N.J. 2016) (quotation marks and citation omitted); *see also Chubb Custom Ins. Co.*, 948 A.2d at 1289 ("If the language is clear, that is the end of the inquiry." (citation omitted)).

Alternatively, a provision in an insurance policy that "is subject to more than one reasonable interpretation . . . is ambiguous[.]" *Templo Fuente*, 129 A.3d at 1075. For a "genuine ambiguity" to exist, "the phrasing of the policy [must be] so confusing that the average policyholder cannot make out the boundaries of coverage[.]" *Id.* (citation omitted). In this scenario "[w]here the policy language [of an insurance policy] supports two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied." *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001) (alterations in original) (quoting *Lundy v. Aetna Cas. & Sur. Co.*, 458 A.2d 106, 111 (N.J. 1983)).

### *1. Exclusionary Clauses*

"Exclusionary clauses are presumptively valid and are enforced if they are specific, plain, clear, prominent, and not contrary to public policy." *Flomerfelt*, 997 A.2d at 996 (quotation marks

and citations omitted). "If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990)). Moreover, "insurance policy exclusions must [generally] be narrowly construed; the burden is on the insurer to bring the case within the exclusion . . . [and a]s a result, exclusions are ordinarily strictly construed against the insurer[.]" *Id.* at 996-97 (quotation marks and citations omitted).

### 2. *Duty to Defend*

There is a duty to defend "when the [underlying] complaint states a claim constituting a risk insured against." *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F. Supp. 2d 515, 530 (D.N.J. 2011) (quoting *Voorhees*, 607 A.2d at 1259). If there is a dispute "between the insured and insurer, the duty of an insurer to defend is generally determined by a side-by-side comparison of the policy and the complaint[] and is triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment." *Wear v. Selective Ins. Co.*, 190 A.3d 519, 527 (N.J. Super. Ct. App. Div. 2018) (citations omitted). Importantly, when "making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." *Flomerfelt*, 997 A.2d at 998 (citation omitted). "Neither the duty to defend nor the duty to indemnify[, however,] 'exists except with respect to occurrences for which the policy provides coverage.'" *Wear*, 190 A.3d at 528-29 (quoting *Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 483 A.2d 402, 405 (1984)).

## B. The SPE Exclusion

Here, the parties dispute whether the Underlying Lawsuit falls within the SPE Exclusion of the Policy. (*See* Pl.'s Moving Br. 14-19; Def.'s Moving Br. 15-19.) In support of its motion,

Plaintiff argues that "the SPE Exclusion was only intended to exclude coverage for employment claims asserted against the Fund that are predicated on liability that is secondary to or otherwise derivative of the Union's liability." (Pl.'s Moving Br. 17.) According to Plaintiff, the SPE Exclusion does not apply to the claims of the Underlying Lawsuit because those claims "do not arise out of, result from, or are otherwise the product of any actions, omissions, or conduct on the part of the Union." (*Id.*) The claims asserted against the Fund, Plaintiff argues, "are expressly predicated on alleged comments made and actions taken by two JATC Trustees . . . on behalf of the Fund." (*Id.*) Defendant, however, argues that the SPE Exclusion does apply, because "[n]o single act or omission as alleged in the [Underlying Lawsuit's SAC] is ascribed solely to the Fund apart from any alleged act or omission of [the Union]." (Def.'s Moving Br. 18.)

The Court must first determine whether the SPE Exclusion is ambiguous before assessing whether the SPE Exclusion applies to the claims in the Underlying Lawsuit.

### *1. The SPE Exclusion is Unambiguous*

The SPE Exclusion states in relevant part that:

> [USLI] shall not be liable for Loss or Defense Costs in connection with any Claim . . . brought against [the Fund] *based upon, arising out of, directly or indirectly resulting from or in consequence of* the activities, operations, acts[,] or failure to act of the following person(s) or entity(ies): **Plumbers & Pipefitters Local #9**.

(JSOF ¶ 33 (emphasis added).)

The SPE Exclusion includes "[a] list of multiple terms, separated by commas and the word 'or,' [so it] is disjunctive, and only one is necessary to trigger the exclusion." *Norman Int'l, Inc. v. Admiral Ins. Co.*, 279 A.3d 425, 434 (N.J. 2022) (citing *Simmons v. Mercado*, 252 A.3d 995, 1005 (N.J. 2021)). Consequently, "[w]hen there are multiple phrases included in the exclusion itself, 'courts separately consider the meaning of each phrase and then collectively analyze the

intent of the exclusion.'" *Id.* (quoting *Flomerfelt*, 997 A.2d at 1003). Moreover, since "the language does not explicitly require a causal element [like 'caused by' or 'contributed by'], the court must determine to what degree the policy intended a causal connection." *Id.* (citation omitted).

New Jersey courts have acknowledged that the phrase "arising out of" is to be "read expansively to define the link between the conduct and the covered activity as originating from, growing out of[,] or having a substantial nexus [to]." *Flomerfelt*, 997 A.2d at 1002 (quotation marks omitted) (quoting *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1010 (N.J. 1998)). Similarly, a New Jersey court found the phrase "directly or indirectly resulting from" to be "extremely broad." *Somerset Med. Ctr. v. Exec. Risk Indem., Inc.*, No. A-6214-08T2, 2010 WL 4057151, at *7 (N.J. Super. Ct. App. Div. Mar. 22, 2010) (citing *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, 609 A.2d 440, 474 (N.J. Super. Ct. App. Div. 1992)). Moreover, "[e]ach of those potential definitions includes a causal link between the excluded act and the injury, but none requires that the excluded act be the proximate cause of the injury." *Callaghan v. Gen. Star Indem. Co.*, 827 F. Supp. 3d 522, 534 (D.N.J. 2026) (alteration in original) (quoting *Flomerfelt*, 997 A.2d at 1004).

Applying these interpretation principles to the SPE Exclusion at issue, the Court finds that the language is unambiguous[8] and that, under the terms of the SPE: (1) the intent of the exclusion

---

[8] Other courts have also found that exclusions similar to the SPE Exclusion are unambiguous. *See, e.g.*, *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 754 (2d Cir. 2023) (affirming district court's decision that the language of an exclusion, which included "arising out of . . .", is unambiguous); *Allstate Prop. & Cas. Ins. Co. v. Jones*, 704 F. Supp. 3d 253, 256 (D. Me. 2023) (finding the phrase "arising out of" in an exclusion of claims is unambiguous); *Carolina Cas. In. Co. v. Sowell*, 603 F. Supp. 2d 914, 925 (N.D. Tex. 2009) (finding exclusion of claims language "based upon, arising out of directly or indirectly resulting from or in consequence of . . ." is unambiguous); *Angus v. Maxum Indem. Co.*, No. 176030765S, 2018 WL 2423591, at *4 (Conn. Super. Ct. May 7, 2018) (same).

is clear and unambiguous—Defendant "shall not be liable for Loss or Defense Costs" of a claim which originates from "the activities, operations, acts, or failure to act" of the Union; (2) there is no causal language requiring proof of proximate cause; and (3) each phrase ("based upon, arising out of, directly or indirectly resulting from or in consequence of") is to be considered independently along with the intent of the exclusion. (*See* JSOF ¶ 33); *Rosario ex rel. Rosario v. Haywood*, 799 A.2d 32, 38 (N.J. Super. Ct. App. Div. 2002) (noting that the construction of insurance policies requires "a broad search for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies" (quotation marks and citation omitted)).

### 2. *The SPE Exclusion Does Not Apply to Underlying Lawsuit*

Having found the SPE Exclusion unambiguous, the Court next conducts a side-by-side comparison of the claims in the Underlying Lawsuit's SAC and the language of the Policy to determine whether the SPE Exclusion is triggered. *See Flomerfelt*, 997 A.2d at 998. "In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." *Id.* (citation omitted). Moreover, Defendant, as the insurer, "bears the burden of proving that a policy exclusion precludes coverage." *Carter-Wallace, Inc. v. Admiral Ins. Co.*, 712 A.2d 1116, 1125 (N.J. 1998).

The Underlying Lawsuit's SAC was filed by Adam Bean, a participant in the Fund's Apprenticeship Program, who received his apprenticeship training through Princeton University. (JSOF ¶ 68.) As a result of being accepted into the Fund's Apprenticeship Program, Bean became a member of the Union. (*Id.*) The Underlying Lawsuit's SAC alleges that the Fund, as Bean's employer, engaged in employment retaliation, interference, and discrimination after Bean requested paternity leave from Princeton. (*Id.* ¶¶ 61, 65, 68.) Specifically, after Bean corresponded

with Princeton and alleged wrongful termination, Bean alleges that two of the Fund's "JATC Trustees 'reprimanded and criticized' . . . Bean and warned him that there would be 'ramifications' if he did not drop his allegations against Princeton. (*Id.* ¶ 68.)

First, Defendant argues that the SPE exclusion applies because "all of the causes of action in the [Underlying Lawsuit's SAC] that are directed against the Fund are also directed against [the Union] in the same counts."[9] (Def.'s Moving Br. 18.) There is no dispute that the Underlying Lawsuit involves both the Fund and the Union. (*See* JSOF ¶ 65.) The claims in the Underlying Lawsuit's SAC clearly allege that the Fund is connected to the Union as an organization with respect to the name, operations, and employees. (JSOF ¶¶ 60-64.) Focusing on that connection, Defendant argues that the Claims "arise entirely out of the actions, omissions, and conduct of [the Union]" because the Trustees named in the Underlying Lawsuit's SAC are connected to the Union. (Def.'s Opp'n Br. 5) This alleged fact, however, does not necessarily mean that the Trustees were acting on behalf of the Union such that the claims of the Underlying Lawsuit's SAC against the Fund must originate from "the activities, operations, acts, or failure to act" of the Union.

Second, Defendant argues that the language in the Underlying Lawsuit's SAC, "[a]cting in concert and under the direction of [the Union], the Fund was [Bean]'s employer . . ." (JSOF ¶ 61), proves that the Claims "arose out of" the Union's actions (*see* Def.'s Moving Br. 18). New Jersey courts, however, have held that a pleading should not be read so narrowly that "the insurance company [may] construct a formal fortress of the third[-]party's pleadings and . . . retreat behind its walls[.]" *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1272 (N.J. 1992) (quotation

---

[9] Defendant later concedes that "USLI does not contend that the [SPE] Exclusion would apply whenever [the Union] is a co-defendant with the Fund or [whenever] there is some reference to [the Union] in a pleading filed against the Fund." (Def.'s Opp'n Br. 8.)

marks and citation omitted). Rather, "[i]nsureds expect their coverage and defense benefits to be determined by the nature of the claim against them, not the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured." *Id.* (citation omitted).

Third, Defendant argues in opposition to Plaintiff's motion that "there is no merit" to the allegation that the "comments made and actions taken by two JATC Trustees [were] . . . on behalf of the Fund." (Def.'s Opp'n Br. 5-6.) Defendant's "duty to defend," however, "is not abrogated by the fact that the claim may have no merit and cannot be maintained against the insured, either in law or in fact, because the cause of action is groundless, false, or fraudulent." *Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 774 A.2d 526, 537-38 (N.J. Super. Ct. App. Div. 2001) (citation omitted); *see also Voorhees*, 607 A.2d at 1259 ("That the claims are poorly developed and almost sure to fail is irrelevant to the insurance company's initial duty to defend."). The Court, therefore, need not decide whether the Underlying Lawsuit has merit, but rather must decide whether the alleged actions in the Underlying Lawsuit arise out of the Union's actions such that the alleged conduct falls within the SPE Exclusion. *See Sears Roebuck*, 774 A.2d at 537-38.

The Court, therefore, is not persuaded by the argument that a general connection between the Fund and the Union equates to the Claims "arising out" of *the Union's* actions. A New Jersey court has previously "rejected [an] insurer's interpretation of the *arising out of* language to mean *incident to* or *in connection with*." *Berardi v. FMI Ins. Co.*, No. A-2940-22, 2023 WL 8231737, at *3 (N.J. Super. Ct. App. Div. Nov. 28, 2023) (emphasis added) (quotation marks omitted) (citing *Flomerfelt*, 997 A.2d at 1005). Moreover, the Court cannot resolve ambiguities regarding the Trustees' actions in favor of Defendant. *See State Farm Fire & Cas. Co. v. Hole*, No. A-2522-22, 2025 WL 880718, at *4 (N.J. Super. Ct. App. Div. Mar. 21, 2025) ("If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." (quoting

*Voorhees*, 607 A.2d at 1259). Mere association between the Fund employees, the JATC, and the Union, without more, does not exclude coverage, and Defendant, therefore, has not met its burden of bringing Plaintiff's Claim within the SPE Exclusion. *See Carter-Wallace*, 712 A.2d at 1125 (noting that the "insurer bears the burden of proving that a policy exclusion precludes coverage").

As a result, the Court finds that the SPE Exclusion does not apply to the Underlying Lawsuit.[10]

### C. USLI has a Duty to Defend[11]

Since the SPE Exclusion does not apply, the Court now considers whether USLI has a duty to defend the Claims. To begin, the Court notes that Defendant does not argue that the Underlying Lawsuit is not a "Claim"[12] as defined under the EP Coverage or otherwise advance arguments regarding a purported duty to defend. (JSOF ¶ 18; *see generally* Def.'s Moving Br.) With that, the Court turns to a review of the language of the Policy itself.

Under the EP Coverage Agreement, USLI and the Fund agreed that:

---

[10] Since the SPE Exclusion does not apply, there is no need for the Court to reach Plaintiff's argument regarding the SPE Exclusion rendering the coverage illusory. (*See* Pl.'s Moving Br. 18.)

[11] Since the Underlying Lawsuit has yet to be adjudicated, the Court will not address Plaintiff's request for indemnification. (*See generally* Pl.'s Mot. for Summary J.); *see Excelsior Ins. Co. v. Selective Ins. Co. of Am.*, 696 F. Supp. 3d 15, 31 (D.N.J. 2023) (finding "an indemnity determination would be premature" since the underlying lawsuit "remains pending[,]" and "courts [generally] refrain from adjudicating whether an insurer has a duty to indemnify an insured until after the insured is found liable for damages in an underlying action" (internal quotations omitted) (quoting *Hartford Ins. Co. v. Dana Transp. Inc.*, No. 16-9091, 2018 WL 10152321, at *5 (D.N.J. May 18, 2018))). Moreover, "[a]n insurer's duty to defend is broader than its duty to indemnify." *Rodriguez v. Shelbourne Spring, LLC*, 327 A.3d 134, 139 (N.J. 2024) (citation omitted).

[12] Under the EP Coverage, "Claim" is defined as "any . . . civil proceeding commenced by service of a complaint or similar pleading . . . received by,[] brought[,] or initiated against any Insured alleging a Wrongful Act, including any appeal therefrom." (JSOF ¶ 18.)

> [USLI] will pay, on behalf of an Individual Insured, Loss and Defense Costs resulting from a Claim first made against an Individual Insured during the Policy Period or during any Extended Reporting Period, if applicable, by or on behalf of:
>
> A. **Employment Practices Liability**[:] any Employee or applicant for employment for a *Wrongful Employment Act*; or
>
> B. **Third Party Liability**[:] any natural person, other than an Employee, for a *Wrongful Third Party Act*.

(JSOF ¶ 17 (emphasis added).)

A "Wrongful Employment Act" is defined to include, in part, actual or alleged acts "committed or allegedly committed by an Organization or by an Individual Insured while acting in his or her capacity": (1) "[h]arassment"; (2) "[r]etaliation"; and (3) "violation of any federal, state[,] or local laws . . . prohibiting discrimination in employment based on a person's . . . gender . . . or any other status that is protected pursuant to any such laws[.]" (*Id.* ¶ 27.) A "Wrongful Third Party Act" is defined to include the following actual or alleged acts "against any natural person, other than an Employee, committed or allegedly committed by an Organization or by an Individual Insured[13] while acting in his or her capacity": (1) "discrimination based on gender . . . or any other status that is protected pursuant to any federal, state or local statutory or common law;" (2) "harassment . . . or other unwelcome conduct;" and (3) "violation of civil rights relating to such discrimination or harassment[.]" (*Id.* ¶ 28.)

In the Underlying Lawsuit, Bean alleges that he was terminated from his employment with Princeton after "submitt[ing] a written request to Princeton for paternity leave." (*Id.* ¶ 68.) Then,

---

[13] Under the EP Coverage Part, the term Individual Insured is defined as "any past, present or future . . . Executive [or] Employee." (JSOF ¶ 23 (alterations in original).) The allegations in the Underlying Lawsuit's SAC clearly name two of the Fund's JATC Trustees as the individuals who engaged in the alleged conduct, and Defendant does not dispute either individual's JATC Trustee status. (*Id.* ¶¶ 63-64; *see generally* Def.'s Moving Br.)

"in response to [his] allegation of wrongful termination against Princeton, two Trustees of the Fund's [JATC] made [him] appear for an 'interrogation'" where the Trustees "intimidated," "reprimanded," "criticized," and "warned" Bean multiple times that there would be "ramifications if he did not drop his allegations against Princeton." (*Id.*)

Based on the Policy as written and the allegations in the Underlying Lawsuit's SAC, the Court finds the claims asserted against the Fund in the Underlying Lawsuit fall within the EP Coverage Part.[14] (*See generally id.* ¶¶ 27, 28, 68); *see, e.g.*, *Rosario*, 799 A.2d at 41 (finding "the complaint alleges wrongful conduct that is clearly intended to be covered"). Defendant has a duty to defend, and the EP coverage applies because "[t]he duty [was] triggered when the [SAC] against the insured 'state[d] a claim constituting a risk insured against.'" *Rosario*, 799 A.2d at 40 (quoting *Danek v. Hommer*, 100 A.2d 198, 203 (N.J. Super. Ct. App. Div. 1953)), *aff'd*, 105 A.2d 677 (1954).)

The Court, therefore, finds that a declaratory judgment in Plaintiff's favor that USLI has a duty to defendant Plaintiff in the Underlying Lawsuit is appropriate.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion is denied and Plaintiff's motion is granted. USLI has a duty to defend Plaintiff in the Underlying Lawsuit. The Court will issue an Order consistent with this Memorandum Opinion.

[signature]
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 8/7/26

[14] The SAC alleges the Fund is Bean's employer thereby placing the Claims under the EP's "Wrongful Employment Act" Coverage Part. (JSOF ¶ 61; *see id.* ¶ 27.) Defendant, however, would still have a duty to defend even if Bean is found to not be an employee, because the alleged conduct also falls under the EP's "Third Party Act" Coverage Part. (*See id.* ¶ 28.)